FILED
COURT OF APPEALS
DIVISION II
2013 DEC 10 AM 9: 51
STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>RYAN JOSEPH McCARTHY,<br><br>Appellant. | No. 43308-7-II<br><br>PUBLISHED OPINION |

FEARING, J.[1] — Ryan Joseph McCarthy appeals the trial court's sentence imposing, as part of restitution, the burial and funeral costs of victims shot by his accomplice in crime. He argues that the State was required but failed to show a causal relationship between these costs and the crimes for which he was convicted. Because RCW 9.94A.753(7) requires that the trial court order a convicted defendant to pay, as restitution, costs paid by the crime victim's compensation fund under the name of the defendant, and the trial court need not, under such circumstances, independently find a causal relationship between these costs and the convictions, we affirm.

## FACTS

During the early morning of August 21, 2010, John Booth and McCarthy entered a home then occupied by David West Sr., David West Jr., Tony Williams, and John Lindberg. McCarthy and Booth sought to extort money from West Sr. because of West Sr.'s agreeing to testify in an unrelated case. West Sr. and Booth spoke outside the house, while McCarthy sat at the kitchen table. West Sr. and Booth returned inside, after which West Sr. walked to his bedroom and grabbed his shotgun. West Sr. then told Booth and McCarthy to leave the

---

[1] Judge Fearing is a Division Three judge serving with Court of Appeals, Division Two, under CAR 21(a).

residence. Booth instead shot West Sr., West Jr., and Williams. Denise Salts entered the residence after hearing gunshots. Booth greeted Salts by asking, "How you doing?" Clerk's Papers at 10. He then shot Salts in the head. Salts survived her wounds, but the remaining three shooting victims perished. Lindberg, who hid in a bathroom, escaped physically unharmed.

McCarthy argued below that he passed polygraph tests indicating he was not present in the house when Booth killed the Wests and shot Williams. Eyewitness Salts disagrees. She reported that McCarthy sat at the table when Salts was shot. As she lay wounded on the floor, she heard McCarthy say, "I don't think he's dead. Let's get out of here." CP at 10.

The State initially charged McCarthy with three counts of first degree felony murder and one count of first degree extortion. The State later amended the information to include two counts of first degree felony murder, one count of first degree murder, and one count of first degree attempted extortion. McCarthy pleaded guilty to first degree robbery, residential burglary, and attempted first degree extortion. In turn, the State dismissed the murder charges. The extortion charge included language that McCarthy or an accomplice threatened West Sr. in order to gain his property. The robbery charge included language that McCarthy or an accomplice, with intent to commit theft, did unlawfully take personal property from West Sr. against his will and that McCarthy or an accomplice was armed with a deadly weapon and did inflict injury on West Sr. For the residential burglary charge, the State alleged that McCarthy or an accomplice entered or remained unlawfully in West Sr.'s dwelling with the intent to commit a crime.

As part of the plea, McCarthy acknowledged the State would seek restitution. The agreement did not identify the specific costs McCarthy was to pay. The trial court ordered McCarthy to pay, in restitution, $5,750 for the funeral and burial expenses of West Jr., and

2

$819.25 for the funeral expenses of Williams paid by the crime victim's compensation fund.[2] The invoices from the crime victim's compensation fund listed both McCarthy and Booth as "offenders" responsible for the costs. Supplemental Clerk's Papers at 94, 102. The trial court did not address whether the death expenses were related to McCarthy's convictions, and thus did not determine whether restitution was appropriate under RCW 9.94A.753(5). The trial court ruled that restitution was appropriate under RCW 9.94A.753(7), because of the crime victim fund payment.

The issue before us is whether a convicted defendant is obligated to pay restitution, regardless of whether the trial court finds a direct causal relationship between the costs and the defendant's convictions, when costs were paid by the Department of Labor & Industries ("Department") crime victim's compensation fund with the defendant's name as offender. We answer in the affirmative.

## ANALYSIS

The authority to impose restitution is not an inherent power of the court, but is derived from statutes. *State v. Gray*, 174 Wn.2d 920, 924, 280 P.3d 1110 (2012); *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991). A number of statutes address restitution under varying circumstances. The controlling statute here is RCW 9.94A.753. The statute reads, in relevant part:

> (3) Except as provided in subsection (6) of this section, restitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury.
> . . . .
> (5) Restitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property or as provided in subsection (6) of this section unless extraordinary circumstances

---

[2] The State did not seek restitution for any costs incurred with respect to the death of West Sr., nor the injuries to Salts.

3

exist which make restitution inappropriate in the court's judgment and the court sets forth such circumstances in the record. In addition, restitution shall be ordered to pay for an injury, loss, or damage if the offender pleads guilty to a lesser offense or fewer offenses and agrees with the prosecutor's recommendation that the offender be required to pay restitution to a victim of an offense or offenses which are not prosecuted pursuant to a plea agreement.

. . . .

(7) Regardless of the provisions of subsections (1) through (6) of this section, the court shall order restitution in all cases where the victim is entitled to benefits under the crime victims' compensation act, chapter 7.68 RCW. If the court does not order restitution and the victim of the crime has been determined to be entitled to benefits under the crime victims' compensation act, the department of labor and industries, as administrator of the crime victims' compensation program, may petition the court within one year of entry of the judgment and sentence for entry of a restitution order. Upon receipt of a petition from the department of labor and industries, the court shall hold a restitution hearing and shall enter a restitution order.

. . . .

(9) . . . The court shall identify in the judgment and sentence the victim or victims entitled to restitution and what amount is due each victim.

RCW 9.94A.753.

RCW 9.94A.753(5) requires that the trial court order restitution whenever the offender is convicted of an offense that results in injury to any person or damage to or loss of property. *State v. Blanchfield*, 126 Wn. App. 235, 240, 108 P.3d 173, *review denied*, 155 Wn.2d 1020 (2005). Under subsection (3), the amount of restitution must be based on "'easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment to persons, and lost wages resulting from injury.'" *Blanchfield*, 126 Wn. App. at 240 (quoting RCW 9.94A.753(3)).

One goal of restitution is to require the defendant to face the consequences of his conduct. *State v. Enstone*, 137 Wn.2d 675, 680, 974 P.2d 828 (1999); *State v. Dauenhauer*, 103 Wn. App. 373, 378, 12 P.3d 661 (2000), *review denied*, 143 Wn.2d 1011 (2001). The statute is designed to promote respect for the law by providing punishment that is just. *Davison*, 116

Wn.2d at 922. Restitution is both punitive and compensatory in nature. *State v. Kinneman*, 155 Wn.2d 272, 279-80, 119 P.3d 350 (2005).

The Supreme Court twice has impliedly rejected an argument that the restitution statute must be construed in favor of the defendant because the statute is punitive in nature. *Gray*, 174 Wn.2d at 927; *Davison*, 116 Wn.2d at 919-20. Instead, in *Davison*, the court mentioned that "[t]he very language of the restitution statutes indicates legislative intent to grant broad powers of restitution." 116 Wn.2d at 920. We will not give the statute an overly technical construction that would permit the defendant to escape from just punishment. *State v. Tobin*, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007); *Davison*, 116 Wn.2d at 922; *State v. Cosgaya-Alvarez*, 172 Wn. App. 785, 791, 291 P.3d 939, *review denied*, 177 Wn.2d 1017 (2013).

McCarthy contends the trial court committed error when failing to address whether the death expenses were caused by the conduct leading to his convictions. When the defendant challenges the legal basis for an award of restitution, we do not defer to the trial court. According to one decision, when the defendant questions the trial court's authority to award a category of restitution, the reviewing court addresses the issue de novo. *State v. Oakley*, 158 Wn. App. 544, 552, 242 P.3d 886 (2010), *review denied*, 171 Wn.2d 1021 (2011). According to another decision, applying an incorrect legal analysis constitutes an abuse of discretion. *Tobin*, 161 Wn.2d at 523.

## I. RCW 9.94A.753(5) — CAUSAL CONNECTION WITH CONVICTIONS

A trial court typically imposes restitution under RCW 9.94A.753(5). This subsection mandates restitution "whenever the offender is *convicted* of an offense *which results* in injury to any person or damage to or loss of property." RCW 9.94A.753(5) (emphasis added). We do not address whether restitution from McCarthy would be proper under subsection (5), since we hold

restitution was proper under subsection (7). Nevertheless, we outline subsection (5)'s causation requirement, because McCarthy seeks to attach the same requirement to restitution under subsection (7).

Under RCW 9.94A.753(5), a restitution order must be grounded on the existence of a causal relationship between the crime charged[3] and proven and the victim's damages. *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008); *Blanchfield*, 126 Wn. App. at 240; *Dauenhauer*, 103 Wn. App. at 378; *see also Davison*, 116 Wn.2d at 919. Some decisions state the rule that losses are causally connected if, "but for" the charged crime, the victim would not have incurred the loss. *Griffith*, 164 Wn.2d at 966; *Tobin*, 161 Wn.2d at 524; *Oakley*, 158 Wn. App. at 552. Under subsection (5), "restitution cannot be imposed based on a defendant's 'general scheme' or acts 'connected with' the crime charged, when those acts are not part of the charge." *Dauenhauer*, 103 Wn. App. at 378 (citing *State v. Woods*, 90 Wn. App. 904, 907, 953 P.2d 834, *review denied*, 136 Wn.2d 1021 (1998)). The losses must be the result of the "precise offense charged." *Woods*, 90 Wn. App. at 907 (quoting *State v. Miszak*, 69 Wn. App. 426, 428, 848 P.2d 1329 (1993)).

Appellate courts repeatedly have reversed trial courts when the costs imposed on the defendant were not directly related to the crime of conviction. One of our decisions, *Oakley*, is illustrative. 158 Wn. App. at 544. Augustus Oakley was convicted of three counts of second degree assault and one count of attempted drive-by shooting. *Oakley*, 158 Wn. App. at 549. On appeal, Oakley argued, among other contentions, that restitution ordered was unrelated to his convictions. *Oakley*, 158 Wn. App. at 551.

---

[3] Although the rule often refers to the crime "charged," our rulings require that the injury or damage be the result of the crime for which the defendant is "convicted." The initial charges are immaterial.

Oakley called Stephen Lynn and expressed anger at Lynn for snitching. *Oakley*, 158 Wn. App. at 547. Lynn invited Oakley to a fight. *Oakley*, 158 Wn. App. at 547. Fifteen minutes later, Richard Taylor and Oakley parked in Oakley's loud car a block from Lynn's home. *Oakley*, 158 Wn. App. at 547. Lynn and his two older brothers walked to the car and Lynn encouraged Oakley to exit the car and fight. *Oakley*, 158 Wn. App. at 547. Oakley stepped from the car and pulled a gun on Lynn. *Oakley*, 158 Wn. App. at 547. The gun misfired. *Oakley*, 158 Wn. App. at 547. The three Lynn brothers fled home. *Oakley*, 158 Wn. App. at 548. Taylor and Oakley pursued the Lynn brothers and the five engaged in fisticuffs in the Lynn yard. *Oakley*, 158 Wn. App. at 548. Afterward, Taylor and Oakley returned to Oakley's car and drove the car the block to the Lynn residence. *Oakley*, 158 Wn. App. at 548. As the car passed the home, Oakley fired the gun again, but the gun misfired a second time. *Oakley*, 158 Wn. App. at 548. Cartridges jammed in the rifle's chamber. *Oakley*, 158 Wn. App. at 548. Oakley then drove the loud car into Ross Dejong's driveway, through an open gate, and struck Dejong's car and garage door. *Oakley*, 158 Wn. App. at 548. The trial court ordered Oakley to pay $3,872 in restitution for damage to Dejong's vehicle and garage. *Oakley*, 158 Wn. App. at 549.

We reversed the trial court in *Oakley*. 158 Wn. App. at 547. We concluded there was no causal connection between the crimes—assault and attempted drive-by shooting—and the damage to Dejong's car and garage. *Oakley*, 158 Wn. App. at 553. Oakley inflicted the damages while fleeing the scene of his crimes, but the damage to the garage was not the result of the precise charges filed. *Oakley*, 158 Wn. App. at 553. If Oakley had been convicted of trespass onto Dejong's property or reckless driving, he could have been assessed with the costs to restore Dejong's property. Other decisions which require a direct relationship, under RCW 9.94A.753(5), between the convictions and the restitution imposed include *Griffith*, 164 Wn.2d

7

at 967; *Dauenhauer*, 103 Wn. App. at 378-79; *Woods*, 90 Wn. App. at 908-09; and *State v. Tetters*, 81 Wn. App. 478, 481, 914 P.2d 784 (1996).

McCarthy claims that Booth's shooting of West Jr. and Wiliams was not causally related to the crimes for which he was convicted—first degree robbery, residential burglary, and attempted extortion. McCarthy argues that the trial court instead imposed restitution upon some "loose sense of general scheme." Brief of Appellant at 10. Contrary to McCarthy's contention, the trial court did not address whether restitution should be imposed under RCW 9.94A.753(5). The trial court did not address whether the death expenses were causally related to McCarthy's convictions. We need not address the applicability of subsection (5) either.

## II. RCW 9.94A.753(7) — CRIME VICTIMS COMPENSATION

McCarthy contends that the trial court could not impose restitution upon him, under RCW 9.94A.753(7), without finding the same causal connection between the death expenses and his convictions that is demanded under subsection (5) of the statute. In other words, he wishes to affix the same causation principles on subsection (7) that we impose on subsection (5). We disagree.

RCW 9.94A.753(7) reads, in pertinent part:

> Regardless of the provisions of subsections (1) through (6) of this section, the court shall order restitution in all cases where the victim is entitled to benefits under the crime victims' compensation act, chapter 7.68 RCW.

A short review of the "Crime Victims' Compensation Act" (Act) is helpful. The Act provides "benefits to innocent victims of criminal acts." Former RCW 7.68.030(1) (2009). "Any payment of benefits to or on behalf of a victim under this [Act] creates a debt due and owing to the department by any person found to have committed the criminal act in either a civil or criminal court proceeding in which he or she is a party." RCW 7.68.120(1). "Each victim

injured as a result of a criminal act . . . or the victim's family or beneficiary in case of death of the victim, are eligible for benefits." Former RCW 7.68.070(1) (2010). The Act defines a "[v]ictim" as one "who suffers bodily injury or death as a proximate result of a criminal act of another person." RCW 7.68.020(15). In turn, a "[c]riminal act" includes "an act committed or attempted in this state which is: . . . punishable as a felony or gross misdemeanor under the laws of this state." RCW 7.68.020(5). The Department administers the crime victim's compensation fund. RCW 7.68.015.

McCarthy cites *State v. Thomas*, 138 Wn. App. 78, 155 P.3d 998 (2007), for the proposition that RCW 9.94A.753(7) allows imposition of restitution for payment by the crime victim fund only upon a finding of a causal connection between the conviction and the victim's injury. But *Thomas* does not support the argument. Sharon Thomas drove her car at a fast pace, while under the influence of alcohol. *Thomas*, 138 Wn. App. at 80. A single car accident injured her passenger Jennifer Wohlgemuth. *Thomas*, 138 Wn. App. at 80. A jury convicted Thomas of DUI (driving under the influence), but acquitted her on charges of vehicular assault. *Thomas*, 138 Wn. App. at 81. The crime victim's compensation fund paid for the medical bills Wohlgemuth incurred as a result of the injuries. The trial court ordered Thomas to pay, under former RCW 9.92.060(2) (2005) and 9.95.210(2) (2005), the bills as part of her restitution obligation. *Thomas*, 138 Wn. App. at 81-82. Each statute contains a provision allowing the court to require the defendant to pay "'restitution to any person or persons who may have suffered loss or damage by reason of the commission of the crime in question.'" *Thomas*, 138 Wn. App. at 82, n.1, n.2 (quoting former RCW 9.92.060; former RCW 9.95.210). The trial court specifically found that alcohol was a cause of the accident. *Thomas*, 138 Wn. App. at 83. On

appeal, we held there was substantial evidence to support the trial court's finding of causation. *Thomas*, 138 Wn. App. at 83-85.

The language of RCW 9.94A.753(7) does not support McCarthy's argument that the same causation requirement imposed for purposes of subsection (5) must be imposed when the crime victims' fund pays expenses. Subsection (7) demands that the trial court "order restitution in *all* cases where the victim is entitled to benefits under the crime victims' compensation act." RCW 9.94A.753(7) (emphasis added). The section does not expressly identify what losses the court may impose on the accused, but the language urges that any benefits paid by the compensation fund be imposed upon the defendant. "The very language of the restitution statutes indicates legislative intent to grant broad powers of restitution." *Davison*, 116 Wn.2d at 920. The defendant's reimbursement of the crime victims' fund, under a loose rather than strict standard of causation, furthers the goal of the defendant facing the consequences of his conduct. *See Enstone*, 137 Wn.2d at 680. To a limited extent, restitution also promotes the worthy objective of protecting the public purse. *See Dick Enters., Inc. v. King County*, 83 Wn. App. 566, 569, 922 P.2d 184 (1996).

If McCarthy were correct, subsection (7) would not extend restitution beyond the circumstances under which restitution is available in subsection (5). But subsection (7) specifically directs the court to disregard the terms of subsection (5). McCarthy's reading of the statute would render subsection (7) superfluous. We interpret statutes to give effect to all the language used so that no portion is rendered meaningless or unnecessary. *Cornu-Labat v. Hosp. Dist. No. 2 of Grant County*, 177 Wn.2d 221, 231, 298 P.3d 741 (2013) (citing *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)).

The Department determined that West Jr. and Williams were victims of the crimes McCarthy committed. Such a determination is not surprising considering that the burglary, robbery, and extortion led to the deaths. Department records list McCarthy as one of the "offenders" responsible for the costs incurred. Suppl. CP at 94, 102. Thus, the Department concluded that McCarthy's crimes were a proximate cause of the death expenses. McCarthy did not seek review of the Department's determination. Under subsection (7) of the statute, the trial court did not need to independently find a direct causal relationship between the conviction and the restitution ordered.

The dissent raises concern about a criminal defendant being ordered to pay restitution based upon a Department finding without the defendant having an opportunity to challenge the Department's determination. Nevertheless, RCW 7.68.120(2) affords one charged with a crime an opportunity to object to a determination made by the crime victim's fund. In any case, McCarthy has not argued on appeal, or before the trial court, any injustice from or invalidity of the Department's determination against him. We do not address arguments not raised below nor briefed here. RAP 2.5(a); *Postema v. Snohomish County*, 83 Wn. App. 574, 587, 922 P.2d 176 (1996), *review denied*, 131 Wn.2d 1019 (1997).

We affirm.

FEARING, J.

PENOYAR, J.

JOHANSON, A.C.J. (dissenting) — This is a case of first impression where we must decide whether RCW 9.94A.753(7) requires the superior court to find that the criminal acts the defendant is found to have committed proximately caused the victims' injuries before the superior court orders the defendant to pay restitution for those injuries. The majority concludes that Ryan McCarthy must pay restitution under RCW 9.94A.753(7) without the superior court first determining whether the criminal act McCarthy committed proximately caused the victims' injuries. Majority at 11. Here, the defendant pleaded guilty to crimes involving David West *Sr.*, yet the court ordered him to pay restitution for David West *Jr.* and Tony Williams without any determination, in either a civil or criminal proceeding to which he was a party, that the criminal acts he committed against West Sr. proximately caused West Jr.'s and Williams's injuries. I respectfully dissent because, in my view, the majority's holding is contrary to the law as it ignores the plain language of RCW 9.94A.753(7) and RCW 7.68.120(1).

## FACTS

In August 2010, John Booth and McCarthy confronted West Sr. in a residence to extort money. Booth shot four individuals inside the residence, killing three of them: West Sr., West Jr., and Williams. In September 2010, the State filed initial charges, charging McCarthy with three counts of first degree felony murder, as an accomplice, and one count of first degree extortion. The Department of Labor & Industries (the Department) paid funeral costs for West Jr. on September 13 and 17, 2010, and funeral costs for Williams on October 6, 2010.

A year later, in September 2011, McCarthy entered *Alford*[4] and *Barr*[5] pleas to first degree robbery, residential burglary, and attempted extortion, *with only West Sr. listed as a victim*; and the State dismissed the murder charges.

---

[4] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

In March 2012, the State moved for restitution and supported its motion with receipts showing amounts that the Department paid for West Jr.'s and Williams's funeral and burial costs from the crime victims' compensation fund. These receipts (1) showed the amounts the Department paid for West Jr.'s and Williams's funeral costs in 2010, and (2) listed Booth and McCarthy as "[o]ffender/s." *See* Suppl. Clerk's Papers (CP) at 94, 102. At the restitution hearing, both the State and McCarthy argued that the superior court must find a causal connection between McCarthy's convictions and the victim's injuries before the superior court could order restitution. But, the superior court disagreed and concluded that it need not establish a causal connection. The court also noted that superior courts needed appellate guidance on this issue since there were no published cases interpreting RCW 9.94A.753(7). The superior court then ordered restitution against McCarthy because it found that under RCW 9.94A.753(7), it was obligated to enter a restitution order that matched what the Department paid. McCarthy appeals the restitution order.

## ANALYSIS

McCarthy argues that the superior court improperly imposed restitution for injuries unrelated to the crimes to which he pleaded. The State argues that we should affirm the restitution order because there is a causal connection between McCarthy's convictions and the restitution. Notably, the State did not argue at the restitution hearing and does not argue on appeal the position taken by the majority here—that the superior court need not make a causal connection finding.

---

[5] *In re Pers. Restraint of Barr*, 102 Wn.2d 265, 684 P.2d 712 (1984). In *Barr*, our Supreme Court held that a "plea does not become invalid because an accused chooses to plead to a related lesser charge that was not committed in order to avoid certain conviction for a greater offense." 102 Wn.2d at 269-70.

McCarthy is correct that the superior court erred when it ordered McCarthy to pay restitution to the Department without first determining whether there is a causal connection between the criminal acts that he was found to have committed and the victims' injuries. Thus, we should remand for the superior court to determine whether McCarthy's criminal acts proximately caused the victims' injuries for which the Department paid benefits. The majority errs by considering only RCW 9.94A.753(7) and by not also considering RCW 7.68.120(1).

RCW 9.94A.753(7) states that, "Regardless of the provisions of subsections (1) through (6) of this section, the court shall order restitution in all cases where the victim is entitled to benefits *under the crime victims' compensation act, chapter 7.68 RCW.*" (Emphasis added). Thus, the analysis turns to chapter 7.68 RCW to determine when a court must order restitution. Under chapter 7.68 RCW, a victim is one "who suffers bodily injury or death as a *proximate result* of a criminal act of another person." RCW 7.68.020(15) (emphasis added). A criminal act is "an act committed or attempted in this state which is . . . punishable as a felony or gross misdemeanor under the laws of this state. RCW 7.68.020(5)(b). Further,

> Any payment of benefits to or on behalf of a victim under this chapter creates a debt due and owing to the department by any person found to have committed *the criminal act* in either a civil or criminal court proceeding in which he or she is a party.

RCW 7.68.120(1) (emphasis added).

Thus, the plain language of RCW 7.68.120(1) requires that in order for a court to order restitution to the Department under chapter 7.68 RCW, three things must occur: (1) the Department must pay benefits to or on behalf of a "victim" who suffered bodily injury or death as a *proximate result of a criminal act*; (2) the person owing the debt to the Department must be *found to have committed the criminal act*; and (3) the finding must occur in either a criminal or

14

civil proceeding *to which the person owing the debt was a party.* *See* RCW 7.68.120(1), RCW 7.68.020(15).

These three requirements are easily met in a restitution hearing because restitution hearings occur after a defendant is either found guilty or pleads guilty to certain criminal acts and the defendant is a party to the proceeding. RCW 9.94A.750(1), (5). The only remaining fact a superior court must determine is whether the criminal acts the defendant was found to have committed proximately caused the victim's injuries. Here, because the superior court declined to decide whether the criminal act the defendant committed proximately caused the victims' injuries, the superior court erred in entering the restitution order against McCarthy.

Problematically, the majority opinion cites to the controlling statute, RCW 7.68.120(1), only one time and does so without any analysis. Majority at 8. The majority wholly ignores RCW 7.68.120(1)'s requirements. Instead, the majority deems it sufficient that the Department "determined" that West Jr. and Williams were victims of the crimes McCarthy committed, and thus the superior court does not need "to independently find a direct causal relationship between the conviction and the restitution ordered." Majority at 11. But, the majority fails to cite to the record to support that the Department (1) made any causal connection determination (2) in a criminal or civil proceeding (3) in which McCarthy was a party.

Instead, the record shows that the Department paid benefits to the funeral homes less than one month after the State initially charged McCarthy with murder and roughly one year before McCarthy pleaded to lesser charges. The only reasonable inference to be made from this record is that the Department paid benefits based on the State's initial charges, not based on a finding that McCarthy committed the criminal act that caused the victims' injuries in a civil or criminal proceeding to which McCarthy was a party. Thus, from our record, there was no determination,

15

with or without McCarthy as a party, that McCarthy committed the criminal acts that caused the victims' injuries.

Further, I disagree with the majority's contention that including a causation requirement in subsection (7) makes it superfluous. Subsection (7) is not superfluous because it gives victims a different, faster mechanism for obtaining benefits than subsections (1) through (6) do. And although subsection (7) directs courts to disregard the terms of subsection (5), it also specifically directs courts to order restitution only "where the victim is entitled to benefits under the crime victims' compensation act, chapter 7.68 RCW," a chapter the majority ignores in its analysis. RCW 9.94A.753(7). That language cross-referencing the crime victims' compensation act shows subsection (7)'s purpose: it allows crime victims to quickly obtain compensation from the Department rather than waiting to obtain compensation from convicted defendants under subsection (5). *See* RCW 7.68.120(1), RCW 7.68.015, and RCW 9.94A.753(7). Indeed, the victims here obtained benefits from the Department one month after McCarthy was initially charged with the crimes, and a year before he pleaded to lesser charges. But that does not mean that McCarthy is automatically responsible for those restitution amounts without a proximate cause analysis. Contrary to the majority's conclusion, merely enforcing RCW 7.68.020(15)'s proximate cause requirement does not make subsection (7) superfluous.

The majority's holding is also contrary to precedent because it improperly subjects McCarthy to pay restitution to the Department for uncharged offenses. Division Three of this court has held that defendants are not required to reimburse the Department when the Department pays benefits to victims of uncharged offenses. *State v. Osborne,* 140 Wn. App. 38, 42, 163 P.3d 799 (2007). In that case, Brandon Osborne seized Steve Paschell's truck at gunpoint, and Paschell injured his back in the process. 140 Wn. App. at 40. Osborne took

Paschell's truck to a third party's residence and shot two people there. *Osborne*, 140 Wn. App. at 40. The State charged Osborne with eight felony counts, including first degree kidnapping and first degree robbery of Paschell, and the Department compensated Paschell for his back injury. *See Osborne*, 140 Wn. App. at 40. Pursuant to a plea deal, the State dismissed the kidnapping and robbery counts, yet the superior court still ordered Osborne to pay restitution to the Department for Paschell's back injury. *Osborne*, 140 Wn. App. at 40.

Division Three reversed, holding that Paschell was an uncharged victim and there was no "causal relationship" between Osborne's crime and Paschell's damages. *Osborne*, 140 Wn. App. at 42. Although Division Three's analysis was tied to RCW 9.94A.753(5), which requires a direct causal relationship between crime and damages, its analysis is functionally equivalent to the analysis required under RCW 9.94A.753(7) because, as explained, RCW 9.94A.753(7) cross-references RCW 7.68.120(1). And RCW 7.68.120(1) requires a finding that the defendant committed the criminal act that proximately caused the victim's injuries.

Here, the Department paid West Jr.'s and Williams's funeral expenses arguably based on McCarthy's initially charged crimes. After the State dismissed McCarthy's initial charges and he pleaded guilty to lesser charges that listed West Sr. as the only victim, the superior court ordered McCarthy to reimburse the Department for the funeral expenses of West Jr. and Williams without finding that the criminal acts to which McCarthy pleaded guilty proximately caused their deaths. Thus, like *Osborne*, McCarthy was improperly ordered to pay restitution to the Department for uncharged offenses without a finding that there was a "causal relationship" between his crime and the victims' damages. *See Osborne*, 140 Wn. App. at 42.

17

Without requiring the superior court to find that McCarthy's criminal acts proximately caused the victims' injuries, the majority decision violates the plain language of RCW 94A.753(7) and RCW 7.68.120(1) and I respectfully dissent.

Johanson, A.C.J.