IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32087-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LISSA RAFTIS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. —Lissa Raftis appeals an order setting restitution following her agreement to plead guilty to a single count of second degree theft in exchange for the State reducing its original charges of residential burglary and theft of a motor vehicle. The court's order adjudged her jointly and severally liable to pay $79,440 with five other defendants who were involved to varying degrees in a series of thefts of a single residence. Ms. Raftis argues that she never agreed to pay restitution for uncharged offenses as part of her plea, very little of the loss was causally connected to her acts, and

because the State simply relied on a restitution amount proved against another defendant, its evidence was insufficient to support any order of restitution against her.

We agree that the State's evidence does not support the restitution ordered. We vacate the order of restitution and remand for the trial court to determine an appropriate amount of restitution based on Ms. Raftis's limited admissions in pleading guilty.

## FACTS AND PROCEDURAL BACKGROUND

In January 2013, police responded to a possible burglary at the home of Danny Mayes, located in rural Sprague, Washington. The responding officer placed a motion sensitive camera at the home in hopes of capturing pictures of the burglars if they returned. When reviewed on March 7, 2013, the camera had taken more than 1,000 photographs of five individuals—four men and on one occasion, a woman—on several dates. The men and woman were photographed removing personal property from the home and grounds and loading it into a Ford truck, whose license plate number was readable in the pictures.

The photographs were shown to the county's chief criminal sheriff deputy the next day, who drove out on SR 231 and saw the Ford truck and three men at the Mayes property. He waited at a distance until the men drove away and then conducted a traffic stop of the truck. The three men in the truck—Robert Clark, Joshua Letchworth, and Roger Lewis—proved to be among the men photographed burglarizing the Mayes home.

2

The three were arrested and were interviewed at the Lincoln County Jail. Mr. Clark and Mr. Lewis identified the woman who had been photographed loading items into the truck as Mr. Clark's girlfriend: the defendant, Lissa Marie Raftis. Upon executing a search warrant for Ms. Raftis's Spokane address, police located items stolen from the Mayes home.

Ms. Raftis was charged with one count of residential burglary and one count of theft of a motor vehicle. The information alleged that the offenses were committed "on or about February 26, 2013," the only day on which Ms. Raftis appeared in the photographs. Clerk's Papers (CP) at 1.

Ms. Raftis reached a plea agreement under which the State amended the charge to reflect a single count of second degree theft, to which Ms. Raftis entered a guilty plea. The amended information again alleged that the offense was committed "on or about February 26, 2013." CP at 10.

At the plea and sentencing hearing, the State recommended that restitution be determined at a later date. The prosecutor explained that the State was "struggling with the restitution because of all the defendants and the different times they were involved, here. So I would—I would include [Ms. Raftis] in that." Report of Proceedings (RP) at 9. In response to the court's question whether "the restitution issues are referencing the—the February 26th issue, that date," the prosecutor answered yes adding, "We're going to have to—we're going to have to sort through it in one big hearing, I think." *Id.*

at 9-10. The judgment and sentence was completed consistently, stating that the legal financial obligation total reflected "does not include all restitution or other legal financial obligations, which may be set by later order of the court." CP at 28.

The "one big hearing" did not go forward quite as expected; by the time of the restitution hearing for Ms. Raftis and one of her codefendants, Mr. Lewis, in November 2013, a restitution hearing had already been held for Mr. Clark, at which the homeowners' total losses resulting from all of the thefts had been found by the court to be $79,440.[1] The prosecutor expressed his "hope that we can stay with that figure, since we already have a judgment entered in one cause joint and several with other defendants" and asked the court to find Ms. Raftis and Mr. Lewis jointly and severally liable for the full $79,440. RP at 14. He also stated "it would be the state's position that we not relitigate the Mayes matter" but later pointed out that "[t]he Mayes are present in the courtroom to testify if need be. I don't think it's necessary again." RP at 15, 18-19.

Ms. Raftis's lawyer argued that while Ms. Raftis was accountable for her involvement on February 26, the State had failed to establish a causal connection between her single second degree theft offense and the full amount it sought as restitution. He pointed out that the $79,440 "reflects the actions of several other defendants and co-defendants not just from February 26, 2013, but many other dates as well." CP at 43. He

---

[1] Mr. Kittleson and Mr. Walrath had not yet been tried.

4

argued that Ms. Raftis was the "least culpable out of all the co-defendants," because she was only at the house "one time." RP at 21. As to an amount, he said:

> She recollects taking some boxes of DVDs, and I see those are valued around $2,000.
>
> It's just not easily ascertainable to calculate what was taken the one time she was there. I would suggest—She was convicted of a Theft 2. I would suggest an amount closer to $5,000—That's the high end of a Theft 2—for Ms. Raftis.
>
> I—I do believe she needs to be accountable, but I don't believe that she should be accountable for $79,000 for the minimal involvement of her actions.

RP at 21-22.

The prosecutor also told the court, "On all my deals with all defendants, we—the plea agreement took into account restitution on all counts originally charged. And that was the agreement." RP at 16. He also argued that Ms. Raftis had more knowledge and involvement than photographs taken by the motion sensitive camera would suggest, explaining:

> Ms. Raftis is the—I believe the sister of Mr. Lewis, and the girlfriend of Mr. Clark, resided in the same household, surrounded by stolen items. And—her mother—we have numerous pawn chits [sic] showing her mother pawning some of the stolen items—. . . [I]'m arguing there's an over-arching conspiracy, here, involving all of them. And [defense counsel] has continuously asserted that his client was only caught one time.
>
> But again, she resided there, she . . . had to know what was going on. She was out there one time burglarizing. And all of them were pawning the Mayes stolen items.

RP at 18. Although no conspiracy had been charged, the prosecutor stated that "the court's entitled to recognize conspiracy in terms of restitution." *Id.*

The trial court followed the State's recommendation, imposing restitution of $79,440 on Ms. Raftis and Mr. Lewis, jointly and severally with their codefendants. But in doing so, it expressed "concern" that neither Ms. Raftis's statement on plea of guilty nor her judgment and sentence referred to restitution for other uncharged or dismissed offenses. RP at 23. It cautioned that with respect to Ms. Raftis, its ruling was "based upon the representation today from the prosecutor that there's understanding that there's overriding—that the restitution was part of the plea negotiations for the entry of the plea." RP at 27.

Ms. Raftis appeals.

## ANALYSIS

Ms. Raftis makes three related assignments of error to the restitution order: (1) the court erred in ordering restitution for losses not causally connected to her acts, (2) the trial court erred in ordering restitution because she did not agree to pay restitution for uncharged offenses in her plea agreement, and (3) the evidence was insufficient to impose any order of restitution against her. After reviewing the applicable statute and its interpretation, we address her arguments and, finding error, address the appropriate remedy.

6

A trial court's authority to order restitution is derived entirely from statute. *State v. Tobin*, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007). Under RCW 9.94A.753(5), restitution "shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property," unless "extraordinary circumstances" make restitution inappropriate. The statutes authorize a court to order restitution up to twice the amount of the victim's loss resulting from the crime. RCW 9.94A.753(3).

Under RCW 9.94A.753(3), restitution must be based on "easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury." But while the damages must be "easily ascertainable," the "'amount of harm or loss need not be established with specific accuracy.'" *State v. Kinneman*, 155 Wn.2d 272, 285, 119 P.3d 350 (2005) (internal quotation marks omitted) (quoting *State v. Hughes*, 154 Wn.2d 118, 154, 110 P.3d 192 (2005), *overruled on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)). Rather, "'[e]vidence supporting restitution is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture.'" *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008) (internal quotation marks omitted) (quoting *Hughes*, 154 Wn.2d at 154).

Restitution is only allowed for losses "causally connected" to the crime charged. *Kinneman*, 155 Wn.2d at 286-87; *State v. Enstone*, 89 Wn. App. 882, 886, 951 P.2d 309

7

(1998), *aff'd*, 137 Wn.2d 675, 974 P.2d 828 (1999) (there must be a causal connection "between the crime and the injuries for which compensation is sought"). And in this connection, while cases commonly refer to the crime "charged," the statute actually requires "that the injury or damage be the result of the crime for which the defendant is 'convicted.'" *State v. McCarthy*, 178 Wn. App. 290, 297 n.3, 313 P.3d 1247 (2013) (noting that "[t]he initial charges are immaterial"); see RCW 9.94A.753(5) ("Restitution shall be ordered whenever the offender *is convicted of an offense* which results in injury to any person or damage to or loss of property") (emphasis added). "Losses are causally connected if, but for the charged crime, the victim would not have incurred the loss." *McCarthy*, 178 Wn. App. at 297 (internal quotation marks omitted) (quoting *Tobin*, 161 Wn.2d at 524.)

Because restitution is limited to losses incurred as a result of the precise offense charged, the general rule is that "[a] defendant may not be required to pay restitution beyond the crime charged or for other uncharged offenses." *State v. Johnson*, 69 Wn. App. 189, 191, 847 P.2d 960 (1993). In other words, restitution may not be imposed "based on the defendant's 'general scheme' or acts 'connected with' the crime charged, when those acts are not part of the charge." *State v. Woods*, 90 Wn. App. 904, 907-08, 953 P.2d 834 (1998) (quoting *State v. Miszak*, 69 Wn. App. 426, 428, 848 P.2d 1329 (1993)).

An exception to this rule applies where a defendant pleads guilty and "expressly agrees" as part of the plea bargaining process "to pay restitution for crimes for which [she] was not convicted." *Johnson*, 69 Wn. App. at 191; RCW 9.94A.753(5) (providing that restitution shall be ordered "if the offender pleads guilty to a lesser offense or fewer offenses and agrees with the prosecutor's recommendation that the offender be required to pay restitution to a victim of an offense or offenses which are not prosecuted pursuant to a plea agreement").

In determining restitution, a court may rely on no more information than is "admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing." *State v. Dedonado*, 99 Wn. App. 251, 256, 991 P.2d 1216 (2000). If the defendant disputes facts relevant to determining restitution, "the sentencing court must either not consider those facts or grant an evidentiary hearing where the State must prove the restitution amount by a preponderance of the evidence." *Id.; Kinneman*, 155 Wn.2d at 285. The loss "must be supported by 'substantial credible evidence.'" *Griffith*, 164 Wn.2d at 965 (quoting *State v. Fleming*, 75 Wn. App. 270, 275, 877 P.2d 243 (1994)).

Subject to these limitations, the trial court has broad discretion in deciding to impose restitution and the amount thereof. *State v. Woods*, 90 Wn. App. at 906; *Hughes*, 154 Wn.2d at 153. Accordingly, a trial court's order of restitution will not be disturbed on appeal unless it is "'manifestly unreasonable or the sentencing court exercised its

discretion on untenable grounds or for untenable reasons.'" *Id.* (quoting *State v. Hunotte*, 69 Wn. App. 670, 674, 851 P.2d 694 (1993), *abrogated on other grounds by State v. R.G.P.*, 175 Wn. App. 131, 302 P.3d 885 (2013), *review denied*, 178 Wn.2d 1020 (2013); *Tobin*, 161 Wn.2d at 523.

*Causal Connection*

Ms. Raftis claims the State failed to establish a causal connection between the second degree theft offense to which she pleaded guilty and the total value of the Mayes's loss from a series of burglaries. *Miszak*, 69 Wn. App. 426, and *State v. Raleigh*, 50 Wn. App. 248, 748 P.2d 267 (1988) support her position.

In *Miszak*, Mr. Miszak and a codefendant were charged with second degree theft for taking jewelry from a victim "on or about February 27, 1989." *Miszak*, 69 Wn. App. at 426. Mr. Miszak later pleaded guilty to an amended information charging him with attempted theft in the second degree. *Id.* at 426-27. In his statement on plea of guilty, Mr. Miszak admitted that, on February 27, 1989, he took one article of jewelry belonging to the victim "valued [at] at least $250." *Id.* at 427 (alteration in original). Nevertheless, the trial court ordered him to pay $4,517 in restitution, representing the total loss claimed by the victim from 13 items of jewelry she contended had been taken. *Id.*

On appeal, Division I held that the restitution order violated the rule that restitution "cannot be imposed based on the defendant's 'general scheme' or acts

10

'connected with' the crime charged, when those acts are not part of the charge." *Id.* at

428 (quoting *State v. Harrington*, 56 Wn. App. 176, 179, 782 P.2d 1101 (1989). It

explained that Mr. Miszak

> was charged with and adjudged guilty of attempted theft of jewelry on
> February 27, 1989, the date designated in the information. At the
> restitution hearing, the State offered no evidence whatsoever to prove that
> the 13 items had been taken during commission of the charged crime. In
> fact, the evidence tended to prove the contrary. The victim's letter, which
> was the sole evidence of loss offered by the State, affirmatively established
> that the losses took place 'systematically' over a period of 'months.' Thus,
> the evidence was insufficient to support the restitution order for the entire
> loss claimed by the victim.

*Id.* at 428. Because the record did not show which item Mr. Miszak took on February 27

and because he had not agreed to pay restitution for losses incurred as a result of

uncharged crimes, the court vacated the portion of the judgment and sentence setting

restitution and remanded for the trial court to determine the appropriate amount of

restitution, stating, "[i]n the absence of any additional evidence of what [Mr.] Miszak

agreed to, the 'victim's loss' in this case is limited to the one item of jewelry that [Mr.]

Miszak actually admitted taking." *Id.* at 430.

Similarly in *Raleigh*, the defendant and a codefendant were charged, "together

with others," with burglarizing a church during a period between July 14, 1985 and July

21, 1985. *Raleigh*, 50 Wn. App. at 249. Mr. Raleigh pleaded guilty to second degree

burglary, admitting in his statement on plea of guilty only that he broke into the church

and "took Rainier Beer." *Id.* at 249-50. The trial court imposed the $9,179.01 in loss

11

proved against Mr. Raleigh's codefendant jointly and severally on Mr. Raleigh. *Id.* at 250. As in this case, the issue on appeal was whether the trial court erred in ordering Mr. Raleigh to pay restitution for the total amount of damages sustained by the church in the course of several burglaries during the time period in which the count was charged. *Id.* at 251.

The court held that the restitution order violated the principle that restitution may only be ordered for losses incurred as a result of crimes charged. *Id.* It found that

> [w]hile, technically, it may be said that [Mr.] Raleigh was ordered to pay restitution for loss incurred as a result of the crime charged, this is so only because of the imprecise manner in which the crime was charged. In reality, there is a disparity between the crime to which [Mr.] Raleigh pleaded guilty (in his own words, he entered the church and took beer) and the extent of loss to the church in the course of several burglaries during the period for which [Mr.] Raleigh was charged.

*Id.* at 253.

These cases establish that "[w]hen a series of thefts is committed against the same victim, restitution can only be imposed for the specific theft that the defendant was convicted of." 13B SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON PRACTICE: CRIMINAL LAW § 3611, at 336 (2d ed. 1998). The principle clearly applies here, making it improper for the court to have granted the State's request that Ms. Raftis be adjudged jointly and severally liable for the Mayes's total losses.

12

*Agreement to pay losses not established*

The State defended the insufficiency of its evidence tying all of the loss to Ms. Raftis at the restitution hearing by representing to the court, "On all my deals with all defendants, we—the plea agreement took into account restitution on all counts originally charged. And that was the agreement." RP at 16. In her statement on plea of guilty, however, Ms. Raftis merely agreed, "If *this* crime resulted in injury to any person or damage to or loss of property, the judge will order me to make restitution, unless extraordinary circumstances exist which make restitution inappropriate." CP at 13 (emphasis added).

Courts have repeatedly held that restitution may only be imposed for losses resulting from uncharged crimes if the defendant "enters into an express agreement to pay restitution." *Kinneman*, 155 Wn.2d at 286; *Woods*, 90 Wn. App. at 908; *Johnson*, 69 Wn. App. at 191. The prosecutor's representation does not suffice. The record on appeal contains no evidence that Ms. Raftis expressly agreed to make restitution based on any crimes other than the theft offense to which she pleaded guilty.

*Remedy*

Because the State did not establish a causal connection between Ms. Raftis's actions and the total losses incurred by the homeowners, it failed to meet its burden of proving the restitution amounts by a preponderance of the evidence. Accordingly, the

13

restitution order must be vacated. *State v. Osborne*, 140 Wn. App. 38, 42, 163 P.3d 799 (2007); *State v. Dennis*, 101 Wn. App. 223, 229, 6 P.3d 1173 (2000).

The State argues that under *Griffith*, the appropriate remedy is to remand for a new restitution hearing. In that case, the court remanded "for the trial court to determine the value of [the victim's] unrecovered items from the police report that can be identified by a preponderance of the evidence to have been in [the defendant's] possession." *Griffith*, 164 Wn.2d at 968. However, it held that no new evidence could be admitted on remand because doing so "would conflict with the statutory requirement that restitution be set within 180 days after sentencing." *Id.* at 968 n.6 (citing RCW 9.94A.753(1); *State v. Dennis*, 101 Wn. App. at 229-30.

Ms. Raftis pleaded guilty to second degree theft and thereby to having stolen property with a value exceeding $750. RCW 9A.56.040(1)(a). In reviewing the statement on plea of guilty with Ms. Raftis, the court reviewed that statement as to value and asked her if it was correct, to which she responded, "Yeah." RP at 7. The guilty plea form in this case permitted the court to "review the police reports and/or a statement of probable cause supplied by the prosecution to establish a factual basis for the plea." CP at 19. But the affidavit of probable cause that was supplied by the State contained no evidence as to the items stolen by Ms. Raftis.

The order of restitution is vacated. We grant the State's request that we remand for the trial court to determine an appropriate amount of restitution, but with the caveat

14

that no new evidence may be offered. The State will be required to rely on Ms. Raftis's limited admissions made in pleading guilty.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, C.J.

WE CONCUR:

Fearing, J.

Lawrence-Berrey, J.