IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGON,<br><br>      Respondent,<br><br>v.<br><br>STEVEN FRANKLIN TALAGA,<br><br>      Appellant. | No. 85451-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, C.J. — Three days after Steven Talaga delivered pills laced with fentanyl to Brillion Lynch, Lynch died of a fentanyl overdose. Talaga subsequently pleaded guilty to one count of delivery of a controlled substance and one count of possession with intent to deliver a controlled substance. He stipulated to the certification of probable cause establishing that he sold Lynch the pills, but did not attest that he caused her death. At the restitution hearing, the trial court ordered Talaga to pay over $35,000 for Lynch's burial costs. Talaga appeals, arguing that the court lacked authority to order restitution for burial costs because Talaga was not charged with causing Lynch's death.

Because there was neither a proven causal connection between Talaga's crime of conviction and losses resulting from Lynch's death nor an express agreement to pay restitution for those damages, the trial court lacked statutory authority to require Talaga to pay burial expenses. We vacate the restitution costs and remand for the trial court to strike the costs associated with the burial.

FACTS

In March 2021, Steven Talaga sold Percocet pills laced with fentanyl to Brillion Lynch. Less than 72 hours later, Lynch died from a fentanyl overdose. As part of an extensive police investigation into the source of the pills, law enforcement used Lynch's phone location data and message history to identify Talaga as a potential seller. Eight months later, Talaga was arrested for attempting to sell similar narcotics to an undercover officer. The State charged Talaga with one count of delivery of a controlled substance for his sale to Lynch and one count of possession with intent to deliver a controlled substance for his sale to the officer. Talaga pleaded guilty to both counts.

The plea agreement stated that Talaga would "pay restitution for the damages resulting from the defendant's conduct noted in discovery." Discovery included only the information contained in the State's probable cause certification, which formed the basis for the charges. Talaga stipulated to the certification of probable cause, but did not attest to causing Lynch's death. He was not charged with controlled substances homicide.

At sentencing, Lynch's family requested that the court sentence Talaga as if he had been convicted of causing Lynch's death. The court denied this request, specifically noting that it was bound by the crime of conviction and could not sentence for controlled substances homicide.

At the restitution hearing, the State acknowledged that no nexus existed between Talaga's crime and Lynch's death but still sought restitution for burial costs incurred by Lynch's family. Relying on the plea agreement language, the

State claimed that Talaga expressly agreed to pay all damages resulting from his conduct, including Lynch's death. Talaga objected, asserting that he did not expressly agree to pay restitution for damages resulting from a crime with which he was not charged.

The court ordered Talaga to pay $28,519.22 to Lynch's mother and $6,620.00 to the Crime Victim's Compensation Program (CVCP), which had already reimbursed some of Lynch's family's costs.

Talaga appeals.

ANALYSIS

Standard of Review

We will not disturb a trial court's entry of a restitution order on appeal absent an abuse of discretion. State v. Tobin, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007). A trial court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. State v. Lord, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007). Application of an incorrect legal analysis or other error of law can constitute an abuse of discretion. Tobin, 161 Wn.2d at 523.

Restitution Order

Talaga asserts that the trial court lacked the authority to order him to pay restitution for burial costs because he did not expressly agree to do so and because no causal connection exists between his charged crime and Lynch's death. The State no longer asserts an express agreement but counters that there is no need for causal connection because a sentencing court is not

3

required to independently find a direct causal connection when the Department of Labor and Industries has determined a victim should be reimbursed for losses under the Crime Victim's Compensation Act (CVCA), chapter 7.78 RCW. We find the State's argument unpersuasive. The trial court lacked authority to require Talaga to pay restitution for those damages, and abused its discretion in doing so, because there is neither a proven causal connection between Talaga's crime of conviction and the losses resulting from Lynch's death nor an express agreement by Talaga to pay restitution for those damages.

"A court's authority to impose restitution is statutory." State v. Griffith, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). Under RCW 9.94A.753(5), restitution shall be ordered whenever a defendant is convicted of an offense that results in injury or damage to or loss of property unless extraordinary circumstances exist. Further, the court "shall order restitution in all cases where the victim is entitled to benefits under the crime victim's compensation act." RCW 9.94A.753(7). But restitution is limited to damages or losses causally connected to the crime. State v. Kinneman, 155 Wn.2d 272, 286, 119 P.3d 350 (2005). The general rule is that a defendant "may not be required to pay restitution beyond the crime charged or for other uncharged offenses." State v. Johnson, 69 Wn. App. 189, 191, 847 P.2d 960 (1993).

"An exception to this general rule exists where the defendant pleads guilty and expressly agrees to pay restitution for crimes for which the defendant was not convicted." Johnson, 69 Wn. App. at 191. When a defendant "pleads guilty to a lesser offense or fewer offenses and agrees with the prosecutor's

4

recommendation," the court may order the defendant to "pay restitution to a victim of an offense or offenses which are not prosecuted pursuant to a plea agreement." RCW 9.94A.753(5).

1. Causal Connection

Talaga first asserts that the record before the trial court did not establish a causal connection between Talaga's conviction for delivery of a controlled substance and damages stemming from Lynch's death. We agree.

Losses are causally connected to a crime if, but for the charged offense, the victim would not have incurred the loss. Griffith, 164 Wn.2d at 965-67. Where contested, the State must prove causation by a preponderance of the evidence. Kinneman, 122 Wn. App. at 860. "In determining any sentence, including restitution, the sentencing court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing." State v. Dedonado, 99 Wn. App. 251, 256, 991 P.2d 1216 (2000).

Here, although Talaga's plea agreement does admit delivery of a controlled substance to Lynch, no admission, acknowledgment, or proof exists that the admitted delivery resulted in Lynch's death. In fact, the State did not attempt to prove causation at the restitution hearing, instead relying on what it purported to be Talaga's express agreement. At the restitution hearing, the State conceded the lack of causation, stating:

> I can see that there's two ways that restitution would be applicable
> here. One is if there was a nexus between the crime that
> Mr. Talaga pled to and the harm caused. I agree with [Talaga's
> counsel] that there isn't a nexus here, specifically on delivery, but

> the exception to the general rule is if the defendant expressly
> agrees to pay restitution for damages that are not directly related.
> And the State's position is that he did make an express agreement.

Because Talaga did not admit or acknowledge causing Lynch's death, and the State provided no evidence that he had, we cannot conclude that but for Talaga's charged crime of delivery of a controlled substance, the losses resulting from Lynch's death would not have occurred.

Still, the State contends that, given the language of Talaga's plea agreement, it does not need to demonstrate that Talaga's delivery of the drug was the but-for cause of Lynch's death. Instead, it need only demonstrate that the need for burial costs resulted from Talaga's conduct as noted in discovery. As such, the State asserts, the phone location data and messages between Talaga and Lynch detailing the existence of the sale are sufficient to establish a causal connection. But the State has not provided evidence that the burial expenses were the result of Talaga's conduct. Burial expenses only result from Talaga's conduct if he were at fault for Lynch's death. The fact that Talaga sold pills to Lynch three days prior to her death, alone, is not enough to establish fault for her death.

The State also contends that there is no need for a causal connection between Talaga's crime and the burial costs incurred by Lynch's family because a sentencing court is not required to independently find a direct causal connection when the Department of Labor and Industries has determined a victim should be reimbursed for losses under the CVCA. We disagree.

Under RCW 9.94A.753(7), "the court shall order restitution in all cases where the victim is entitled to benefits under the [CVCA]." The court does this, "upon receipt of a petition from the department of labor and industries." RCW 9.94A.753(7). Under the CVCA, the Crime Victim Compensation Program (CVCP) reimburses victims for their losses or damages. RCW 7.68.020(16). "[E]ach victim injured as a result of a criminal act . . . or the victim's family or beneficiary in the case of death of the victim, [is] eligible for benefits" subject to certain limitations. RCW 7.68.020(1). RCW 9.94A.753(7) incorporates this standard but leaves the determination of causation to the Department of Labor and Industries. Although a court may rely on a less strict standard of causation in ordering restitution paid to the CVCP, a showing of causation made by the State is still required. State v. McCarthy, 178 Wn. App. 290, 301, 313 P.3d 1247 (2013).

Talaga's restitution hearing centered on whether he would have to pay restitution for the costs related to Lynch's death based on his conviction of delivery of a controlled substance, regardless of the lack of casual connection between his crime and the State's restitution request. The State conceded this lack of causal connection, focusing instead on what it purported to be Talaga's express agreement to pay restitution. As a result, the court did not address the Department of Labor and Industries's determination of cause, which in turn meant that Talaga had no opportunity to respond to or refute that determination. The record is inadequate to resolve whether the court was required to order restitution based on the CVCA.

The record neither establishes what the CVCP is claiming reimbursement for nor provides evidence of any Department of Labor and Industries determination showing that Lynch's family was entitled to burial costs under the CVCA. Accordingly, the record is insufficient for the trial court to have made a determination based on the State's request for restitution that Lynch's family was entitled to benefits and repayment from Talaga, pursuant to RCW 9.94A.753(7). The court entered its restitution order based on its determination that Talaga expressly agreed to pay restitution, not on any causal connection or CVCA determination. Therefore, the fact that the court ordered restitution to the CVCP does not mean that the court found that the CVCA's requirements were properly met. The State cannot rely on an absent determination to provide a basis for the entirety of the requested restitution.

We conclude that the trial court lacked authority to impose restitution based on a causal connection between Talaga's guilty plea and losses resulting from Lynch's death.

2. Express Agreement

Lastly, Talaga maintains that he did not expressly agree to pay for the burial costs because these were losses stemming from a crime with which he was not charged. Although the State relied exclusively on Talaga's supposed express agreement below, it does not address this argument on appeal. We agree with Talaga.

" '[R]estitution for loss beyond the scope of the crime charged is properly awardable only when the defendant enters into an express agreement to make

8

such restitution as part of the plea bargain process.' " State v. Woods, 90 Wn. App. 904, 908, 953 P.2d 834 (1998) (internal quotation marks omitted) (quoting State v. Miszak, 69 Wn. App. 426, 429, 848 P.2d 1329 (1993)).

Here, no evidence exists that Talaga expressly agreed to pay restitution outside of his charged offenses. The State did not even request fees beyond the scope of the charged crime until the restitution hearing. In Talaga's initial plea statement, the only reference to restitution was that the prosecutor would provide a restitution recommendation at a later date. At Talaga's plea hearing, the prosecutor again recommended that the restitution be "determined at a later date." The judgment and sentence also noted that restitution would be determined at a future hearing. Given the charges, Talaga had no reason to anticipate that the State would request restitution for burial costs and the language providing that he would pay restitution for damages resulting from his conduct was not an express agreement to do so.

Moreover, Talaga had no reason to agree to pay restitution beyond his charges. Generally, a defendant will make an express agreement to pay restitution for an uncharged crime if he pleads guilty to a lesser offense to avoid prosecution for a greater one. That did not occur in the present case. Because Talaga did not plead guilty to a lesser degree or included charge, there is no reason that he would expressly agree to pay restitution for damages resulting from a greater charge.

Because the trial court lacked the statutory authority to require Talaga to pay burial expenses, it abused its discretion by doing so. We remand for the court to strike the burial costs from the restitution order.

Smith, C.J.

WE CONCUR:

Feldman, J.          Dwyer, J.