195 P.3d 506 (2008)
STATE of Washington, Respondent,
v.
Joan Marie GRIFFITH, Petitioner.
No. 79883-4.
Supreme Court of Washington, En Banc.
Argued May 29, 2008.
Decided November 6, 2008.
*507 William D. Edelblute, Attorney at Law, Spokane Valley, WA, for Petitioner.
George William Gagnon III, Mark Erik Lindsey, Spokane County Prosecuting Attorney's Office, Spokane, WA, for Respondent.
J.M. JOHNSON, J.
¶ 1 Joan Marie Griffith appeals the amount of restitution she was ordered to pay after pleading guilty to possessing stolen property in the second degree. She claims substantial evidence does not support the trial court's finding that she possessed $11,500 worth of the victim's unrecovered stolen jewelry. We agree. We vacate the order and remand for a new restitution hearing.

FACTS AND PROCEDURAL HISTORY
¶ 2 Sometime between Christmas 2001 and New Year's Day 2002, burglars broke into Robert and Elaine Linscott's home and stole jewelry, sterling silverware, firearms, and other items. On January 1, 2002, the Linscotts reported the theft and provided police a detailed list of the stolen items, along with their estimated values totaling $44,000.
¶ 3 Russ and John Slaughter are the co-owners of Eastern Washington Coin Company in Spokane. On January 2, 2002, Joan Marie Griffith came into the coin company with plastic bags containing jewelry, including a string of pearls and what appeared to be a large diamond ring. Griffith sold the Slaughters some scrap gold for $96. Griffith also asked Russ[1] to appraise the diamond ring. He offered her between $480 and $500. She declined the offer. Two days later, Griffith sold the Slaughters the pearl necklace.
¶ 4 Shortly after the burglary, Mrs. Linscott searched local pawnshops and resale stores for her stolen belongings. She found several of her missing items, including her pearl necklace, at the Slaughters' coin company. The police were called, and Russ identified Griffith as the person who sold them the stolen jewelry.
¶ 5 When police interviewed Griffith, she claimed two men approached her in a parking lot and sold her the jewelry she later sold to the coin company. After the interview, police searched Griffith's house and did not find any other stolen items.
¶ 6 The State charged Griffith with trafficking in stolen property in the second degree. RCW 9A.82.055(1). On November 22, 2004, she pleaded guilty to possessing stolen property in the second degree[2] and indicated she understood she would be ordered to pay restitution.
*508 ¶ 7 In June 2005, the court held a restitution hearing. Mrs. Linscott testified approximately $11,000 worth of her jewelry was still missing, including a two and one-half carat diamond ring, a sapphire ring, a couple of amethyst rings, and a pearl ring. She said she understood Griffith was seen "carrying" these gems. Restitution Hearing Report of Proceedings (RP) at 5-7.
¶ 8 John testified Griffith came in the coin company with a "bag of stuff" and sold him some scrap gold for $96. RP at 9-10. When asked if he recalled seeing Mrs. Linscott's "two and a half carat diamond ring," he said he saw a similar ring with a large, diamond-like stone but did not examine it closely and could not say for certain it was Mrs. Linscott's. RP at 10. He remembered seeing the pearl necklace Griffith sold them and the Linscotts later recovered, but could not identify any of the other items listed in the police report as being in Griffith's possession. He also testified that if Griffith had a bag of gems with her, he likely would have remembered.
¶ 9 After John's testimony, the court concluded "$11,500 of Elaine Linscott's property was identified by John Slaughter as having been in defendant's possession after the crime," Clerk's Papers (CP) at 26, and ordered Griffith to pay restitution in that amount.
¶ 10 Griffith appealed, arguing there was insufficient evidence supporting the restitution order. The Court of Appeals affirmed the order. State v. Griffith, 136 Wash.App. 885, 151 P.3d 230 (2007). Judge Schultheis dissented. Id. at 892, 151 P.3d 230.

STANDARD OF REVIEW
¶ 11 "The size of [a restitution] award is within the court's discretion and will not be disturbed on appeal absent a showing of abuse." State v. Mead, 67 Wash.App. 486, 490, 836 P.2d 257 (1992) (citing State v. Davison, 116 Wash.2d 917, 919-20, 809 P.2d 1374 (1991)). We review a trial court's factual findings for substantial evidence. Ingram v. Dep't of Licensing, 162 Wash.2d 514, 522, 173 P.3d 259 (2007).

ANALYSIS
¶ 12 A court's authority to impose restitution is statutory. Davison, 116 Wash.2d at 919, 809 P.2d 1374. A judge must order restitution whenever a defendant is convicted of an offense which results in loss of property. RCW 9.94A.753(5). The amount of restitution must be based "on easily ascertainable damages." RCW 9.94A.753(3). While the claimed loss "need not be established with specific accuracy," it must be supported by "substantial credible evidence." State v. Fleming, 75 Wash.App. 270, 274-75, 877 P.2d 243 (1994). "Evidence supporting restitution `is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture.'" State v. Hughes, 154 Wash.2d 118, 154, 110 P.3d 192 (2005) (internal quotation marks omitted) (quoting Fleming, 75 Wash.App. at 274-75, 877 P.2d 243), overruled on other grounds by Washington v. Recuenco, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006). If a defendant disputes the restitution amount, the State must prove the damages by a preponderance of the evidence. State v. Kinneman, 155 Wash.2d 272, 285, 119 P.3d 350 (2005).
¶ 13 Although there is no right to a jury determination of facts supporting the amount of restitution, "[r]estitution is allowed only for losses that are `causally connected' to the crimes charged," State v. Tobin, 161 Wash.2d 517, 524, 166 P.3d 1167 (2007) (quoting Kinneman, 155 Wash.2d at 286, 119 P.3d 350) unless the defendant "`expressly agrees to pay restitution for crimes for which [she] was not convicted.'" State v. Woods, 90 Wash.App. 904, 908, 953 P.2d 834 (1998) (quoting State v. Johnson, 69 Wash.App. 189, 191, 847 P.2d 960 (1993)). Losses are causally connected if, but for the charged crime, the victim would not have incurred the loss. Tobin, 161 Wash.2d at 524, 166 P.3d 1167. "In determining whether a causal connection exists, we look to the underlying facts of the charged offense, not the name of the crime to which the defendant entered a plea." State v. Landrum, 66 Wash.App. 791, 799, 832 P.2d 1359 (1992).
¶ 14 A court can, in its discretion, order restitution up to double the amount of the *509 victim's loss. RCW 9.94A.753(3). In the instant case, however, the court found no reason to vary upward from the Linscotts' claimed damages and ordered Griffith to pay $11,500 in actual restitution.
¶ 15 We agree with Judge Schultheis's dissent below that, based on the record before us, substantial evidence does not support Griffith's restitution order. Although Mrs. Linscott testified Griffith possessed $11,000 worth of her jewelry, her testimony was based on what she understood the Slaughters saw. She asserted the Slaughters saw Griffith carry a bag of the stolen gems into the coin company, but they did not testify to this.
¶ 16 John Slaughter testified Griffith came in with a "bag of stuff" (RP at 9), sold him gold scrap for $96 and a pearl necklace that was eventually returned to the Linscotts, and carried a ring with a diamond-like stone, similar to Mrs. Linscott's ring. He could describe the rest of the items in Griffith's possession only as a "mixture of stuff." RP at 10.[3] He also said if Griffith brought a bag of gems into his store, he likely would have remembered.
¶ 17 Russ Slaughter did not testify at the restitution hearing, but the investigating officer's affidavit of facts stated Russ could testify that Griffith brought in "several miscellaneous pieces of jewelry," which she sold to the coin company for $96, and also a ring with a large diamond for which he offered her between $480 to $500, but she declined to sell. CP at 30.
¶ 18 Neither John's nor Russ's testimony sufficiently supports the trial court's conclusion that Griffith possessed $11,500 of Mrs. Linscott's unrecovered property. As Judge Schultheis noted, "[n]othing other than the items bought for around $96 and the diamond ring is ever specifically described by any witness in the record or at the hearing." Griffith, 136 Wash.App. at 893, 151 P.3d 230 (Schultheis, J., dissenting).
¶ 19 Griffith did not plead guilty to burglary. She pleaded guilty to possessing $250-$1,500 worth of stolen property. "`[C]ulpability for possession of stolen property does not necessarily include culpability for the stealing of the property. The actual thief is guilty of a different crime.'" Griffith, 136 Wash.App. at 894, 151 P.3d 230 (Schultheis, J., dissenting) (quoting State v. Keigan C., 120 Wash.App. 604, 609, 86 P.3d 798 (2004), aff'd sub nom. State v. Hiett, 154 Wash.2d 560, 115 P.3d 274 (2005)). Because Griffith did not agree to pay for the Linscotts' loss from the burglary, she is responsible only for the value of the Linscotts' unrecovered property proven to be causally related to her crime.[4]
¶ 20 The State concedes the factual basis for Griffith's restitution order is "skimpy." Br. of Resp't at 5. The evidence is not only "skimpy"  it is legally insufficient. John Slaughter's testimony that Griffith brought "stuff" into the coin company does not support the trial court's finding that Griffith possessed $11,500 worth of the Linscotts' unrecovered property.
¶ 21 Griffith asks this court not only to vacate her restitution order, but also to refuse to remand for a new restitution hearing. We decline to go this far. Griffith pleaded guilty to possessing stolen property and should pay restitution for her crime. We remand for the trial court to determine the value of Mrs. Linscott's unrecovered items from the police report that can be identified by a preponderance of the evidence to have been in Griffith's possession.[5] No *510 new evidence may be admitted.[6]

CONCLUSION
¶ 22 Substantial evidence does not support Griffith's restitution order. We vacate the restitution order and remand for a new restitution hearing.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justice SUSAN OWENS, Justice MARY E. FAIRHURST, Justice RICHARD B. SANDERS, Justice DEBRA L. STEPHENS, Justice TOM CHAMBERS.
MADSEN, J. (concurring/dissenting).
¶ 23 While I agree that this matter should be remanded for a new hearing to determine the amount of restitution due, I disagree with the majority's statement that no new evidence may be admitted. The majority's prohibition is antithetical to a primary purpose of an award of restitution-compensation to the victim of the crime. It is also antithetical to the legislature's intent that sentences be accurate.
¶ 24 In the past the court reasoned that some aspects of a sentence generally require the State to carry its burden of proof at the time of sentencing. For example, the court held that the State has the burden of proving criminal history for purposes of determining a defendant's offender score. In re Pers. Restraint of Cadwallader, 155 Wash.2d 867, 876, 123 P.3d 456 (2005); State v. Ford, 137 Wash.2d 472, 480, 973 P.2d 452 (1999). In the normal case where the State failed to carry this burden after specific objection, the State was held to the existing record. Id. at 485, 973 P.2d 452 (citing State v. McCorkle, 88 Wash.App. 485, 500, 945 P.2d 736 (1997), aff'd, 137 Wash.2d 490, 973 P.2d 461 (1999)); McCorkle, 137 Wash.2d at 496-97, 973 P.2d 461.
¶ 25 But restitution is not of the same nature. Restitution is both punitive and compensatory. State v. Kinneman, 155 Wash.2d 272, 279-81, 119 P.3d 350 (2005). When the State produces evidence of the amount of restitution, it is doing so not only in aid of punishing the defendant commensurate with the losses caused by the criminal act, but also in aid of compensating the victim for those losses. Restitution contains "a strong remedial component" because by statute it is connected to the victim's losses. State v. Shultz, 138 Wash.2d 638, 643-44, 980 P.2d 1265 (1999). Indeed, "restitution payments are paid to the superior court clerk and disbursed directly to the victims, not to the State." Id. at 644, 980 P.2d 1265.
¶ 26 Significantly, the legislature has expressly determined that one of a victim's rights in this state is the right "to entry of an order of restitution by the court in all felony cases" absent extraordinary circumstances. RCW 7.69.030(15). When this statutory right is at stake, it is critical that relevant available evidence be considered. In a similar vein, the people of this state adopted the victims' rights amendment to our state constitution, demonstrating a high commitment to victims of criminal offenses. See Const. art. I, § 35 (amend.84). While the victims' rights amendment does not directly apply here, the public policy underlying the amendment nevertheless strongly suggests that the majority is wrong in arbitrarily prohibiting additional evidence bearing on whether and to what extent restitution should be awarded to the victim of a crime.
¶ 27 Even to the extent that restitution is punitive, refusing to permit consideration of new evidence on restitution is contrary to the legislature's intent that sentences be accurately determined. Recently, the legislature overturned this court's decisions in Ford, McCorkle, and Cadwallader insofar as the court held in these cases that the State could not establish additional criminal history on resentencing under certain circumstances. The legislature explained that "[g]iven [the court's decisions in Ford, McCorkle, and Cadwallader], the legislature finds it is necessary to amend the provisions in [the Sentencing Reform Act] in order to ensure that sentences imposed accurately reflect the offender's actual, complete criminal history, whether imposed at sentencing or upon resentencing." *511 Laws of 2008, ch. 231, § 1. The legislature accordingly amended RCW 9.94A.525 to provide that "[p]rior convictions that were not included in criminal history or in the offender score shall be included upon any resentencing to ensure imposition of an accurate sentence." Laws of 2008, ch. 231, § 3(21) (emphasis added); RCW 9.94A.525(21); see also Laws of 2008, ch. 231, § 4(2) (amending RCW 9.94A.530 to provide that "[o]n remand for resentencing following appeal or collateral attack, the parties shall have the opportunity to present and the court to consider all relevant evidence regarding criminal history, including criminal history not previously presented" (emphasis added)); RCW 9.94A.530(2). The provisions are retroactive. Laws of 2008, ch. 231, § 5.
¶ 28 While criminal history is not at issue here, the 2008 amendments support my view that whenever restitution is calculated, whether at the original sentencing or upon resentencing, additional evidence should be admitted to ensure that restitution accurately reflect the losses caused by the defendant's criminal conduct. The legislature intends that sentences be accurate.
¶ 29 For all of these reasons, when a case is remanded for a new restitution hearing, new evidence should be generally admissible so that a court can make a proper determination of restitution necessary to fairly compensate the victim.
¶ 30 The justification offered by the majority for its refusal to permit additional evidence to be admitted on remand is the restitution statute and State v. Dennis, 101 Wash. App. 223, 229-30, 6 P.3d 1173 (2000), which the majority cites for the proposition that "[i]ntroducing new evidence on remand would conflict with the statutory requirement that restitution be set within 180 days after sentencing." Majority at 9 n. 6. Thus, under the majority opinion a new restitution order cannot be entered if more than 180 days has passed regardless of whether the court takes new evidence. This rule necessarily bars correction or revision of restitution orders following appeals! Given the rule it adopts, the majority does not explain why its remand in this case for determining a new amount of restitution after the 180-day statutory period has passed is permissible but taking new evidence after the 180-day period is not. In each instance the result is a new order and a new amount of restitution due entered beyond the 180-day period.
¶ 31 The majority's reasoning is also inconsistent with our cases in which, following appeal and discretionary review, we have remanded for entry of new restitution orders after the 180-day period has expired. For example, in Kinneman, 155 Wash.2d 272, 119 P.3d 350, we remanded for an evidentiary hearing on restitution over three and one-half years after the defendant's original sentencing hearing at which the defendant tendered a check as restitution.
¶ 32 Further, both this court and the Court of Appeals have permitted additional evidence on remand for a redetermination of the amount of restitution due. E.g., State v. A.M.R., 147 Wash.2d 91, 97-98, 51 P.3d 790 (2002) (trial court improperly limited restitution awards to vehicle owners' out-of-pocket costs and declined to award restitution to insurers; this court remanded with instructions to enter restitution orders subject to sufficient proof of loss); State v. Hahn, 100 Wash.App. 391, 400, 996 P.2d 1125 (2000) (remanding restitution orders to the trial court for the taking of additional evidence); State v. Kisor, 68 Wash.App. 610, 620, 844 P.2d 1038 (1993); State v. Pollard, 66 Wash. App. 779, 786-87, 834 P.2d 51 (1992).
¶ 33 Finally, in Dennis, 101 Wash.App. at 229-30, 6 P.3d 1173, the Court of Appeals relied on McCorkle for its refusal to permit additional evidence establishing the required causal connection between the defendant's crime and injuries sustained. But as explained above, unlike the criminal history at issue in McCorkle and Ford, restitution has an important compensatory component that should lead to a different result. Further, as also explained, the legislature has overturned McCorkle and it is not viable authority for refusing to permit recalculation of restitution based on new evidence introduced at resentencing proceedings.
¶ 34 I would hold that new evidence may be presented on the amount of restitution *512 due. Because the majority does not, I dissent.
WE CONCUR: Justice CHARLES W. JOHNSON.
NOTES
[1] First names are used for clarity. No disrespect is intended.
[2] Former RCW 9A.56.160 (1995) provides:

(1) A person is guilty of possessing stolen property in the second degree if:
(a) He or she possesses stolen property other than a firearm as defined in RCW 9.41.010 which exceeds two hundred fifty dollars in value but does not exceed one thousand five hundred dollars in value.
[3] The record does not support the Court of Appeals' general declaration that John "remembered other items" in addition those listed. Griffith, 136 Wash.App. at 892, 151 P.3d 230.
[4] Counsel for the defendant conceded at oral argument that John's testimony was sufficient to establish the ring he saw was Mrs. Linscott's two and one-half carat diamond ring. Wash. Supreme Court oral argument, State v. Griffith, No. 79883-4 (May 29, 2008), at 15 min., 30 sec., audio recording by TVW, Washington State's Public Affairs Network, available at http://www.tvw. org.
[5] The Slaughters valued Mrs. Linscott's diamond ring at $480-$500. Defense counsel conceded that Mrs. Linscott valued the same ring at $4,500. It is unclear from the record whether the court intended the ordered restitution amount to reflect the coin company's valuation or Mrs. Linscott's valuation. The $11,500 amount seems to include both the $4,500 and $500 figures. On remand, the court should clarify its intent.
[6] Introducing new evidence on remand would conflict with the statutory requirement that restitution be set within 180 days after sentencing. RCW 9.94A.753(1); see State v. Dennis, 101 Wash.App. 223, 229-30, 6 P.3d 1173 (2000).