IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　Respondent,<br><br>v.<br><br>DOUGLAS ROSS WHITE,<br><br>　　　　　Appellant. | No. 74874-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: July 31, 2017 |

LEACH, J. — Douglas White appeals the restitution the trial court ordered him to pay after he pleaded guilty to 28 counts of second degree identity theft and 27 counts of mortgage fraud. White challenges the sufficiency of the evidence to support the restitution order and claims that a jury should have decided the amount of restitution. He also contends that his convictions for mortgage fraud charged in counts 45 to 55 should be set aside because the State charged these crimes after the statute of limitations period for them had expired.

Because sufficient evidence supports the restitution order and White was not entitled to a jury trial on restitution, we affirm the restitution order. And because White fails to identify any evidence that the statute of limitations expired, we affirm the judgment and sentence.

## Background

Washington State licensed Tom Reed to perform residential appraisals. Reed did business as Washington Appraisal Reviews Inc. and signed his appraisal reports by an electronic "signature." Reed hired White to perform appraisals as a trainee. White would accompany Reed on home appraisals and then put the appraisals together for Reed's

review. White took the appraiser licensing exam twice during his time at Washington Appraisal and failed each time. White worked closely with Reed for several years. He misused his trust as Reed's mentee to obtain Reed's electronic signature and certified residential appraiser license number. During the 2008 economic downturn, Reed laid off his employees.

White, doing business as Washington Real Estate Services Inc., performed appraisals. He used Reed's electronic signature and license number on the appraisal reports submitted to the client and companies. White's compensation for these appraisal reports ranged from $400 to $800.

White pleaded guilty to second degree identity theft and mortgage fraud as charged in the amended information. White entered a straight plea without a stipulation to real facts. In his statement on the plea of guilty, White admitted to using Reed's electronic signature and his appraiser's license number on appraisals he performed. White performed those appraisals on properties with the intent to mislead lenders and borrowers into thinking that Tom Reed completed the appraisals. His guilty plea recognized that he committed the crimes over a multiyear period between May 16, 2007, and August 30, 2012.

After sentencing, the court held a restitution hearing. The sentencing court ordered White to repay several individuals who had paid him for appraisals believing he was the licensed Tom Reed and to repay Reed the monies White received from the appraisals performed under Reed's name.

White timely appeals.

## Analysis

White challenges the sufficiency of the evidence to support the restitution order and claims that a jury should have determined the amount of restitution. White also argues that several of his convictions should be vacated because they were barred by the statute of limitations. White also filed a statement of additional grounds for review, claiming ineffective assistance of trial counsel and an improper relationship between the prosecutor and the judge.

### Restitution

Statutes provide a trial court's only authority to order restitution.[1] These statutes give courts broad discretion when determining the amount of restitution.[2] The trial court abuses its discretion if its restitution order is manifestly unreasonable or the court exercised its discretion on untenable grounds or for untenable reasons.[3]

A court must order restitution when "the offender is convicted of an offense which results in injury to any person or damage to or loss of property."[4] The court must base its order "on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury."[5]

A court can order restitution only for losses that are causally connected to the crimes charged unless the defendant expressly agrees to pay restitution for crimes for which he was not convicted.[6]

---

[1] State v. Smith, 119 Wn.2d 385, 389, 831 P.2d 1082 (1992).
[2] State v. Kinneman, 155 Wn.2d 272, 282, 119 P.3d 350 (2005).
[3] State v. Enstone, 137 Wn.2d 675, 679-80, 974 P.2d 828 (1999).
[4] RCW 9.94A.753(5).
[5] RCW 9.94A.753(3).
[6] State v. Griffith, 164 Wn.2d. 960, 965-66, 195 P.3d 506 (2008).

The sentencing court ordered White to repay 10 of the victims who had paid for an appraisal that was essentially worthless because it was not performed by a licensed appraiser. Because these individuals each obtained refinancing or a mortgage for their property, White claims they suffered no loss. He notes the lack of any evidence that these appraisals were inaccurate. We find no merit to this argument. The individuals did not receive what they purchased, a certified appraisal report. Thus, their loss is causally related to White's crime.

The sentencing court also ordered White to pay Reed the monies he received for each of the appraisals White performed using Reed's license. White claims that the record contains no evidence that these customers would have hired Reed. In its oral ruling, the sentencing court explained the connection between the appraisals and Mr. Reed's entitlement to the payment from them:

> Every one of those appraisals purportedly was sent to Mr. Reed. On the face of them, they were appraisals that were going to be done by Mr. Reed's firm. To me, that sort of makes the nexus right there. An argument could be made, well, if Mr. White wasn't involved, would Mr. Reed have gotten the appraisals anyway? I don't know, but that's not what happened. What happened was those appraisals were going to be done by Mr. White, who was purportedly affiliated with Mr. Reed.

The sentencing court also considered whether this would be double dipping but noted that the restitution statute authorized the court to impose up to twice the victim's loss or the offender's gain.[7] Because White was enriched by the amount paid by each individual, paying that amount to Reed falls within the statutory

---

[7] RCW 9.94A.753(3); see Kinneman, 155 Wn.2d at 285 (evidence supporting restitution sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture).

parameters even though White might pay the same amount to some individuals who submitted claims.

Our courts have recognized that restitution statutes are "intended to require the defendant to face the consequences of his or her criminal conduct."[8] The trial court did not abuse its discretion in awarding restitution.

Jury Trial

White contends that the Sixth Amendment to the United States Constitution and article 1, section 21 of the Washington State Constitution each entitles a defendant to have a jury decide the amount of restitution. The Washington Supreme Court rejected this argument in State v. Kinneman.[9]

White argues that Southern Union Co. v. United States[10] and Alleyne v. United States[11] have eroded Kinneman's holding. Southern Union extended the holding in Apprendi v. New Jersey[12] to criminal fines, concluding that there was "no principled basis under Apprendi for treating criminal fines differently" than sentences of imprisonment or death.[13]

White's reliance on Southern Union is misplaced because the decision merely reemphasized Apprendi's holding that if a court uses a factual finding to elevate a sentence above the statutory maximum, due process requires proof of that fact beyond a

---

[8] State v. Tobin, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007) (citing State v. Davison, 116 Wn.2d 917, 922, 809 P.2d 1374 (1991)).
[9] 155 Wn.2d 272, 282, 119 P.3d 350 (2005).
[10] 567 U.S. 343, 132 S. Ct. 2344, 183 L. Ed. 2d 318 (2012).
[11] ___ U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013).
[12] 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).
[13] S. Union, 567 U.S. at 349.

reasonable doubt.[14] No statute caps the dollar amount of restitution a Washington court can order, subject to the requirement that the court base any restitution on the damages caused by a defendant's course of conduct. Apprendi remains inapplicable to Washington's restitution scheme.

Nor does Alleyne help White. There, the United States Supreme Court extended Apprendi to facts necessary to impose minimum punishment, not just maximum punishment.[15] Washington's restitution statute does not require a minimum amount. Kinneman remains controlling on this issue.

Statute of Limitations

White claims the court should vacate his convictions on counts 45-55. The State added these counts with an amended information filed February 20, 2015. The counts all involve mortgage fraud acts that occurred between June 12, 2008, and June 19, 2009. RCW 19.144.090(2) states that "[n]o information may be returned more than (a) five years after the violation, or (b) three years after the actual discovery of the violation, whichever date of limitation is later." The incidents all occurred more than five years before the State filed the amended information. But the statute allows the State to file an information within three years after actual discovery of the violation.

White claims that the State discovered the fraud charged in these counts when Tom Reed contacted the police in 2010 about White's use of Reed's electronic signature on an appraisal Reed did not perform. But that victim was not one of those listed in counts

---

[14] Apprendi, 530 U.S. at 490.
[15] Alleyne, 133 S. Ct. at 2155.

45-55. In July of 2010, Reed met with an investigator from the Department of Housing and Urban Development and provided her with a copy of a property appraisal performed for Stay in Home Mortgage. In 2012, Reed supplied the investigator with another incident of misuse of his credentials. An investigation over the course of the next several years revealed multiple additional incidents of fraud and the discovery of a codefendant who participated in the mortgage frauds. Nothing in the record shows that the State had actual knowledge of the additional incidents more than three years before it charged White with them. A complaint about one incident by a potential victim of a crime that an investigation later shows involved a continuing course of criminal conduct with many incidents does not provide the State with actual knowledge of each incident, only those reported. The State's actual discovery of an incident starts the statute of limitations for that incident.

Statement of Additional Grounds for Review

White filed a statement of additional grounds for review, alleging ineffective assistance of counsel and an improper relationship between the prosecutor and the trial judge.

White argues that his counsel was ineffective for not raising the issue of the statute of limitations for all of his counts. Because we have already determined that the statute of limitations did not bar the filing of the information, White's counsel was not ineffective for failing to raise the issue.[16]

_____

[16] We note that the issue of the statute of limitations was raised by the codefendant. White's counsel was present during argument, and the court noted that should it decide that the statute of limitations barred the convictions for the codefendant, such a bar would also apply to White. The court later found the statute of limitations did not bar the actions.

White next claims that an improper relationship existed between the prosecutor and the judge because the prosecutor had allegedly worked for the judge in the past. The record before us contains no evidence of any improper relationship. White's conclusory allegations provide no basis for appellate review.[17]

Appellate Costs

Finally, White asks this court to deny the State appellate costs based on his indigency. We generally award appellate costs to the substantially prevailing party on review. However, when a trial court makes a finding of indigency, that finding continues throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency."[18] Here, the trial court found White indigent. If the State has evidence indicating significant improvement in White's financial circumstances since the trial court's finding, it may file a motion for costs with the commissioner.

Affirmed.

_Leach, J._

WE CONCUR:

_Cox, J._

---

[17] See RAP 10.10(c) (appellate court will not consider statement of additional grounds for review unless it informs the court of the nature and occurrence of alleged errors).

[18] RAP 14.2.

-8-