IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77897-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SHYLA DUNAYSKI, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 15, 2019 |

SCHINDLER, J. — Shyla Dunayski pleaded guilty to possession of stolen property in the second degree and agreed to pay restitution. Dunayski appeals the order to pay $4,595 in restitution. We affirm.

Possession of Stolen Jewelry

In June 2016, Joshua Trevelen stole "custom jewelry valued at approximately $80,000" from Allison Stern's house on San Juan Island. Trevelen gave some of the jewelry to his girlfriend Shyla Dunayski.

Stern reported the theft to the police. Dunayski told a San Juan County Sheriff Deputy that she had some of the jewelry. Dunayski brought some of the jewelry to the sheriff's office. Stern said the jewelry Dunayski returned was "worth approximately $3,000."

Dunayski told the deputies she "had other jewelry from the Stern collection." Six days later, Dunayski contacted the police. Dunayski told Deputy Jeffrey Asher she

would bring in the additional jewelry but "wanted a promise that she was not going to get arrested." Deputy Asher said he "could not promise anything."

Dunayski brought a bag of stolen jewelry to Deputy Asher. Deputy Asher "went thru the plastic bag and found that a couple of items still had the price tags on them." Stern said the additional bag of jewelry that Dunayski returned was worth "at least $3,000."

The State charged Dunayski with possession of stolen property in the first degree and trafficking in stolen property in the second degree. Dunayski entered an Alford[1] plea of guilty to possession of stolen property in the second degree. As part of the plea agreement, Dunayski agreed to pay restitution.

The court sentenced Dunayski to 50 hours of community service and ordered her to undergo a substance abuse evaluation and "[f]ollow all recommended treatment." The court ordered Dunayski to pay the restitution determined following a restitution hearing.

Restitution Hearing

Before the restitution hearing, the State submitted the declaration of luxury goods specialist Katherine Ray, photographs of the recovered stolen jewelry, and an Excel spreadsheet that Stern prepared detailing the value of the stolen jewelry.

Stern testified. Stern said she "started making jewelry out of electronic components" in college as a design student. After she graduated, Stern started a jewelry business. Her designs "evolved into semi-precious stones and silver and gold."

---

[1] North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

"[H]igh-end retailers" like Neiman Marcus sold her jewelry. Stern's "average yearly sales" were about "half a million dollars."

Stern testified that she moved to the Netherlands with her spouse in 2013. Stern left "all my finished goods inventory from my jewelry manufacturing business" and jewelry making tools in the basement of the house on San Juan Island. Stern testified the jewelry "was in perfect condition and was immediately salable." Stern said, "[E]ach piece was packaged in the little plastic" jewelry bags, labeled, and priced. Stern prepared and left an inventory list of the items with the jewelry at the house. Stern testified that the total value of the inventory was approximately $330,000 to $340,000.

Stern testified her real estate agent had been "looking after the house" and in June 2016, discovered that "the house was broken into." Stern flew back to San Juan Island and found "nothing remaining of my jewelry." Stern testified the inventory list she prepared was stolen with the jewelry and "80 percent is still missing."

Stern prepared an Excel spreadsheet listing the value of each of the 29 stolen items Dunayski returned. The court admitted the spreadsheet and photographs of the jewelry into evidence as exhibits.

Stern estimated the value of each item based on what she "sold them for in the past." Stern testified the total pretheft value of the jewelry was $5,525. Stern testified the recovered jewelry had no current market value. Stern testified that every piece "would need to be repaired, or cleaned up, or fixed" in order to put the jewelry "out into the marketplace."

> The problem is I can't repair any of the jewelry, so I'm not sure how one would assess the value other than to say, if I can't sell it in the condition that it was in when it was stolen, then to me there's nothing I could do with it because I would have to fix whatever's there.

Katherine Ray worked as a "global luxury goods industry specialist" for 30 years. Ray marketed and sold "high-end fashion products and services for luxury designer and sportswear labels such as Louis Vuitton, Gucci, Tommy Hilfiger, [and] Nike." Ray testified that Stern's jewelry "sold all over the world through high-end retailers such as Saks Fifth Avenue, Neiman Marcus, Takashimaya in Japan, in museum stores such as the Museum of Modern Art in New York, and in design stores and craft galleries."

Ray evaluated over 20 pieces of Stern's jewelry that are "part of my own personal collection" and provided photographs of the jewelry. Ray testified that the "total value of the jewelry pieces in the attached images would retail in the global marketplace for between six and eight thousand dollars."

Dunayski submitted the declaration of Phillip Burton and Charles Yousling of Burton Jewelers (collectively, Burton). Burton testified there are "many different values that can be assigned to jewelry items and it depends on the market the item is sold or purchased in and the circumstances and time frame / urgency of the sale or purchase."

Burton examined the stolen jewelry Dunayski returned. Burton testified:

> We understand that . . . some of the items we reviewed were represented at "designer" or "artist" label by Allison Stern and have reviewed some information regarding that on-line. However, the absence of a maker's mark (hallmark) on the items or and a consistency of quality across the spectrum of items calls into question the added value of such provenance. If there was/is a specific market where this added value is available we are not immediately aware of it and it would have to be demonstrated by itemized receipts.

Burton states, "Generally the quality and desirability and thus the value of the items we viewed in the markets we are aware of is low." Burton testified that the total fair market value of the items Dunayski returned was $930.

The prosecutor argued Stern is "an expert about her own jewelry" based on "her history, her years of designing, and her experience." The prosecutor argued Stern based her valuation on "what she's able to sell these goods for . . . had they not been stolen in the first place." The prosecutor argued Stern's testimony established a "reasonable basis for coming up with the amounts that she did" and the jewelry Dunayski returned was worth a "total of $5,525." The prosecutor argued the "value is now gone, and she has suffered 100 percent loss."

Defense counsel argued Burton's testimony established that the " 'quality and desirability of these items is low.' " Defense counsel stated there is "a staggering difference between the fair-market value that the jewelers give to this and the value that Ms. Stern says it is worth." Defense counsel argued the "total value that represents the loss that Ms. Stern suffered is $930." Defense counsel argued Stern could invest in tools to "get these things into shape" and recoup her loss but she has no "interest in doing" so.

The court issued a letter decision. The court found the values Stern assigned to the jewelry "are her opinions regarding the items' retail sales prices, based on her experience as the designer and creator of similar pieces and on the sales prices she has received for them in past years." The court considered Stern's opinion of the values "[a]s the creator and owner of the recovered items and as the seller of similar items." The court found Stern's "opinion concerning the value of the recovered items before being stolen, as corroborated by the Declaration of Ms. Ray, to be reasonable and reliable." The court found the value of the jewelry before the jewelry was stolen was $5,525.

The court found Burton are "experts in the valuation of jewelry" and expressed opinions based on their examination of all of the jewelry returned by Dunayski. The court found Burton's opinion "as to the present value of the items they examined to also be reasonable and reliable." The court found that the current fair market value of the jewelry is $930.

> Based on Ms. Stern's testimony regarding the condition of the recovered items and, equally importantly, on the appraisal values given by Mr. Burton and Mr. Yousling in connection with the items they examined, the Court is persuaded that the recovered items have lost much of the value they once had, but that they have not lost all value.

The court found the $930.00 fair market value assigned to the jewelry is "a reliable measure of what Ms. Stern could likely sell the recovered items for, in their present condition, once returned to her." The court found the fair market value of the jewelry "provide[s] a reasonable way for the Court to measure the loss Ms. Stern will have suffered once the recovered items are returned." "Comparing the total values provided for all of the Dunayski items ($5,52[5].00 according to Ms. Stern and $930.00 according to Mr. Burton and Mr. Yousling) indicates a loss of $4,595.00—which is an 83% loss." The court ordered Dunayski to pay $4,595.00 to Stern in restitution.

Appeal of Restitution Order

Dunayski contends sufficient evidence does not support the amount of restitution the court ordered. Dunayski argues the court erred in finding Stern's opinion of the value of the stolen jewelry was reasonable and reliable.

The authority to impose restitution is statutory. State v. Deskins, 180 Wn.2d 68, 81, 322 P.3d 780 (2014). The court shall order restitution "whenever the offender is convicted of an offense which results in . . . loss of property." RCW 9.94A.753(5).

6

Where, as here, the defendant disputes the amount of restitution, the State must prove the damages by a preponderance of the evidence. State v. Kinneman, 155 Wn.2d 272, 285, 119 P.3d 350 (2005); Deskins, 180 Wn.2d at 82. The amount of restitution must be "based on easily ascertainable damages for . . . loss of property." RCW 9.94A.753(3). While the amount need not be established with specific accuracy, it must be supported by substantial and credible evidence. State v. Griffith, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). Evidence supporting restitution is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture. Griffith, 164 Wn.2d at 965; Kinneman, 155 Wn.2d at 285. Credibility determinations are for the trier of fact and are not subject to review. State v. Mines, 163 Wn.2d 387, 391, 179 P.3d 835 (2008).

We will not disturb a trial court's order of restitution absent abuse of discretion. State v. Tobin, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007). We review a trial court's challenged findings for substantial evidence. Griffith, 164 Wn.2d at 965. Unchallenged findings are verities on appeal. State v. Gibson, 152 Wn. App. 945, 951, 219 P.3d 964 (2009).

Dunayski contends sufficient evidence does not support the "pre-theft value of Stern's jewelry." Dunayski assigns error to the court's finding that "Ms. Stern's opinion concerning the value of the recovered items before being stolen, as corroborated by the Declaration of Ms. Ray, to be reasonable and reliable."

Washington follows the general rule that the owner may testify to the value of property without being qualified as an expert. State v. Williams, 199 Wn. App. 99, 105-06, 398 P.3d 1150 (2017) (citing McCurdy v. Union Pac. R.R., 68 Wn.2d 457, 468, 413

7

P.2d 617 (1966)). The unchallenged findings establish Stern is the "owner and designer of the stolen jewelry" and she assigned the pretheft value to the jewelry based on "her experience as the designer and creator of similar pieces and on the sales prices she has received for them in past years."

Stern evaluated the 29 pieces of stolen jewelry Dunayski returned. Stern prepared an Excel spreadsheet listing "each individual piece" and the "value [she] would have sold it for." Stern testified that the pretheft value of the jewelry was $5,525. Ray's testimony corroborated Stern's valuation. The court did not err in finding the value of the jewelry before it was stolen was $5,525.

Dunayski claims Stern "would have naturally been inclined to overstate the current value of her leftover inventory." But credibility determinations are for the finder of fact and we do not review credibility determinations on appeal. Gibson, 152 Wn. App. at 951. Substantial evidence supports the court's finding that Stern's testimony about the value of the jewelry was reasonable and reliable. We conclude the State met its burden of proving restitution and the court did not abuse its discretion in establishing the amount of restitution. We affirm the order of restitution.

Schindler, J.

WE CONCUR:

Chun, J.

Andrus, J.

8