IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 81816-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM ROY CARROLL, JR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Typically, a victim injured by a crime is entitled to restitution for their injuries. When a victim is compensated by the Crime Victims Compensation Program (CVCP), RCW 9.94A.753(7) lets the program petition the superior court for restitution for expenses incurred as a result of the crime. The court can rely on a broad range of evidence to determine the amount of restitution owed, so long as it does not rely on speculation or conjecture. Because the court here did not rely on speculation or conjecture to award a victim restitution for injuries caused by a criminal act, the court did not abuse its discretion.

Therefore, we affirm.

FACTS

Nearing midnight on August 20, 2018, William Carroll, Jr. and D.Q., a woman he was dating, were having sex. D.Q. told Carroll to stop. He refused. Carroll repeatedly punched D.Q.'s head and slammed it into the headboard of a bed. After Carroll stopped, sometime in the early hours of August 21, D.Q. ran away.

The next day, D.Q. went to the hospital because she had a migraine headache, felt fatigued, and was experiencing numbness, tingling and paralysis in her extremities. She was diagnosed with post-concussive syndrome.

In the following days, Carroll offered to pay D.Q. to keep her from speaking to the police. She refused, and he became paranoid that she had told the police about the attack. Carroll called D.Q. and threatened to kill her. She was afraid he would carry out his threat and reported both the threat and the attack to the police.

Carroll was charged with witness tampering, third degree assault with a sexual motivation, and second degree rape. Each charge carried a domestic violence enhancement. Carroll promised to plead guilty to the first two charges, and the State promised to dismiss the rape charge. Carroll entered guilty pleas on January 16, 2020. He stipulated to the facts in the certificate for determination of probable cause and in the prosecutor's summary.

On February 7, 2020, Carroll was sentenced to 19 months' incarceration, 36 months of community custody, $600 in legal financial obligations, and an amount of restitution to be determined later. He waived the right to appear at future restitution hearings.

D.Q. was unable to work from August 22, 2018 until January 22, 2020. She filed a claim with the CVCP. The CVCP determined she was entitled to $1,148.80 per month in lost wages and paid her a total of $15,000 as of February of 2020. On March 17, the King County Prosecuting Attorney's Victim Assistance Unit sent Carroll's defense counsel a letter requesting $15,000 in restitution for the CVCP as payment for D.Q.'s lost wages.

Carroll did not agree to the proposed amount of restitution, so the superior court held a restitution hearing. The court entered an order setting restitution at $15,000.

Carroll appeals.

ANALYSIS

We review an order setting restitution for abuse of discretion.[1] An abuse of discretion occurs when the sentencing court's decision is based on untenable grounds, when the court applies the wrong legal standard, or bases its ruling on an erroneous view of the law.[2]

Carroll argues the court abused its discretion because it entered the restitution order without requiring that the State provide evidence establishing a causal connection between Carroll's crimes and the $15,000 in restitution ordered pursuant to RCW 9.94A.753(7).[3]

---

[1] State v. Cawyer, 182 Wn. App. 610, 616, 330 P.3d 219 (2014).

[2] Id. (quoting State v. Corona, 164 Wn. App. 76, 78, 261 P.3d 680 (2011)).

[3] Carroll also contends his procedural due process rights were harmed because he was unable to challenge the CVCP's restitution calculation. He asserts that the State's interpretation of RCW 9.9A.753(7) "empowers the CVCP—a government agency—to determine the amount of a restitution award in secret, completely shielded from judicial scrutiny." Reply Br. at 2. We decline to address this contention because he fails to cite relevant authority to advance it. Carroll does not acknowledge or discuss RCW 7.68.120, which sets notice and hearing procedures for the CVCP. RCW 7.68.120(2)(a) affords an offender notice of the amount of restitution calculated and an opportunity to request a hearing in superior court about the calculation. State v. McCarthy, 178 Wn. App. 290, 302, 313 P.3d 1247 (2013). Because Carroll provides no facts showing he was denied notice or the opportunity to be heard and makes only conclusory arguments about due process, we decline to consider the merits of his argument. RAP 10.3(a)(6); State v. Mason, 170 Wn. App. 375, 384, 285 P.3d 154 (2012) (quoting West v. Thurston County, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012)).

RCW 9.94A.753(7) mandates restitution for a "victim" who is entitled to benefits under chapter 7.68 RCW, the crime victim's compensation act. In relevant part, RCW 7.68.020(16) defines "victim" as "a person who suffers bodily injury or death as a proximate result of a criminal act of another person." A "criminal act" is "an act committed or attempted in this state which is . . . punishable as a felony or gross misdemeanor under the laws of this state."[4] Like the crime victims' compensation act, RCW 9.94A.030(54) defines "victim" with a proximate cause requirement: "'Victim' means any person who has sustained emotional, psychological, physical, or financial injury to person or property <u>as a direct result</u> of the crime charged."[5]

Under RCW 9.94A.753, "[r]estitution is allowed only for losses that are causally connected to a crime."[6] To determine whether a causal connection existed, "we look to the underlying facts of the charged offense, not the name of the crime to which the defendant entered a plea."[7] Thus, when the State provides evidence showing an offender committed a "criminal act" and the act caused injury to a "victim," the State has demonstrated the requisite causal connection.[8]

---

[4] RCW 7.68.020(6)(a).

[5] (Emphasis added); <u>see</u> BLACK'S LAW DICTIONARY 274 (11th ed. 2019) (noting "direct cause" is synonymous with "proximate cause").

[6] State v. Kinneman, 155 Wn.2d 272, 286, 119 P.3d 350 (2005) (citing <u>State v. Woods</u>, 90 Wn. App. 904, 907-08, 953 P.2d 834 (1998)).

[7] <u>State v. Griffith</u>, 164 Wn.2d 960, 966, 195 P.3d 506 (2008) (quoting <u>State v. Landrum</u>, 66 Wn. App. 791, 799, 832 P.2d 1359 (1992)).

[8] We note that this reasoning does not conflict with the holding in <u>McCarthy</u>, where the court concluded RCW 9.94A.357(7) does not require a trial court to "independently find a direct causal relationship between the conviction and the restitution ordered." 178 Wn. App. at 301. Whether a court independently concludes a beneficiary qualifies as a "victim" under RCW 9.94A.030(54) or accepts the CVCP's conclusion under RCW 7.68.020(16) that a beneficiary qualified as a "victim," its

Here, Carroll admitted he forcibly had sex with D.Q. and committed a felony by assaulting her, causing "bodily harm accompanied by substantial pain that extended for a period sufficient to cause considerable suffering."[9] Carroll's criminal act left D.Q. with bruises around her body, a concussion, and post-concussion syndrome. D.Q. qualified as a "victim" under RCW 7.68.020(16), so RCW 9.94A.753(7) applied and required ordering some amount of restitution.

"Once the fact of damage is established[,] the amount need not be shown with mathematical certainty."[10] "'Evidence supporting restitution is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture.'"[11] A broad range of evidence is admissible because the rules of evidence do not apply to sentencing hearings.[12] The State has the burden of proving the amount of restitution by a preponderance of the evidence.[13]

In State v. Deskins, the court concluded the evidence of restitution supported the trial court's order.[14] After neighbors witnessed a woman dumping the body of a dog on

---

conclusion that a beneficiary was a "victim" means the court concluded the offender's act proximately caused an injury to the beneficiary.

[9] Clerk's Papers at 61.

[10] State v. Mark, 36 Wn. App. 428, 434, 675 P.2d 1250 (1984) (citing State v. Bush, 34 Wn. App. 121, 124, 659 P.2d 1127 (1983)).

[11] State v. Deskins, 180 Wn.2d 68, 82-83, 322 P.3d 780 (2014) (internal quotation marks omitted) (quoting State v. Hughes, 154 Wn.2d 118, 154, 110 P.3d 192 (2005)).

[12] Id. at 83 (citing ER 1101(c)(3)).

[13] Id. at 82 (citing Kinneman, 155 Wn.2d at 285).

[14] 180 Wn.2d 68, 84, 322 P.3d 780 (2014).

the side of the road, the police searched her property and seized 37 live dogs.[15] Rather than care for the dogs itself, the sheriff's department sent them to an animal shelter for care.[16] The woman was later convicted of animal cruelty and, based upon bills from the shelter, ordered to pay $21,582.21 to the sheriff's department as restitution for paying the animal shelter.[17] The woman argued the State failed to prove the causal relationship between her crime and the restitution.[18] The court concluded the bills were sufficient proof because they "were not speculation or conjecture but rather actual amounts" billed by the shelter.[19] "The State did not need to provide any causal evidence except that it seized the animals in connection to an unlawful confinement of animals charge and that it incurred costs as a result."[20]

Here, the State submitted a cost ledger from the CVCP showing D.Q. received $15,000 as time loss compensation, calculated from August 22, 2018, when she was diagnosed with post-concussion syndrome caused by Carroll's assault, to February 8, 2020. The State also provided a letter from the CVCP to D.Q., explaining she was entitled to monthly compensation of $1,148.80 as "a wage loss payment."[21] To evaluate

---

[15] Id. at 73.

[16] Id.

[17] Id. at 75-76.

[18] Id. at 83-84.

[19] Id. at 83.

[20] Id. at 84.

[21] CP at 91. Carroll relies upon State v. Pollard, 66 Wn. App. 779, 834 P.2d 51 (1992), and State v. Kisor, 68 Wn. App. 610, 844 P.2d 1038 (1993), to argue the evidence here was insufficient because it did not provide "a sufficient basis for rebuttal." Appellant's Br. at 13; Reply Br. at 8. In Pollard, the court concluded that a report, which was "double hearsay, an insufficient basis upon which to base the sum of restitution ordered." 66 Wn. App. at 786. Citing Pollard, the Kisor court concluded evidence

a lost wages claim, the CVCP requires "[d]ocumentation from a treating provider based on objective medical evidence stating the claimant is not able to work based on the effects of the crime injury."[22]

As in Deskins, the State proved Carroll committed a crime that caused injuries to a victim. It submitted documents showing the CVCP incurred $15,000 in damages as a result of the injuries Carroll inflicted on D.Q. Neither speculation nor conjecture were required to conclude the CVCP incurred damages as a result of Carroll's criminal act. Carroll may disagree with the amount of restitution requested, but, on this record, he fails to show the court abused its discretion by concluding he owed $15,000 in restitution to the CVCP.

Therefore, we affirm.

_____

WE CONCUR:

_____     _____

---

provided to prove the amount of restitution was insufficient because it relied upon "hearsay declarations." 68 Wn. App. at 620. But Pollard and Kisor are called into serious doubt by Deskins, which distinguished Kisor and pointedly explained that the rules of evidence, including hearsay, do not apply to restitution hearings. 180 Wn.2d at 83 (citing ER 1101(c)(3)).

[22] WAC 296-30-010.