IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40562-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL CLAYTON TURLEY, JR, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Daniel Clayton Turley, Jr. pleaded guilty to second degree burglary. He appeals the trial court's order requiring him to pay restitution for a sawmill that was taken from the same property. Although he raises several arguments with respect to the restitution order, we agree that the facts used to support Turley's plea to one count of burglary fail to establish a causal connection between Turley's crime and the missing sawmill. As a result, we hold that the trial court abused its discretion by including the missing sawmill in its order of restitution.

BACKGROUND

On July 5, 2021, Roy Bennett reported to the Stevens County Sheriff's Office that his uninhabited, rural property near Colville, Washington, had been burglarized. Bennett told the responding deputy that a large sawmill and other items were missing. Bennett

also told the deputy that he purchased the sawmill for approximately $8,000 and added that it was large and would take a trailer to haul away.

On August 25, detectives went to Daniel Turley's residence for an unrelated matter. Turley was not home, but the detective observed several plastic barrels in his yard that resembled items that had been reported stolen from Bennett's property.

The detectives next went to Victoria Enright's residence, knowing Turley spent much of his time there. Upon arrival, the detectives saw a black plastic pond insert matching an item reported stolen from Bennett's property. Suspicious, one of the detectives returned to the office and reviewed the deputy's earlier report and security camera video recorded from Bennett's property. The video showed Dan and what appeared to be Enright driving onto Bennett's property. The video also showed Turley leaving Bennett's property in Turley's pickup with plastic barrels, the pond insert, and other items. The report made no mention that the video showed Turley hauling away the sawmill or pulling a trailer. Based on this evidence, a detective obtained a search warrant for Turley's and Enright's properties.

The sheriff's office first executed the warrant to search Turley's property. During the search, Turley waived his *Miranda*[1] rights and admitted he and Enright took items from Bennett's property. He stated that Enright showed him the property and that she and another individual, Caleb Howes, had been stealing from it for over a year. Turley

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

further explained that Enright and another man, Charles Moreau, stole the sawmill and moved it to another property on Deep Lake Boundary Road belonging to David Etzel. Turley then led officers around his property, identifying several items taken from Bennett's property. The sawmill was not found on Turley's property.

That same day, the sheriff's office executed the warrant to search Enright's property. Enright admitted that she went with Turley and Moreau to Bennett's property on several occasions and that Howes had also taken items over the preceding year. Enright also told deputies that she was "busy taking other items while Chuck [Moreau] loaded up the Sawmill" [sic] and took it to Etzel's property. The report does not make it clear whether Turley was present when the sawmill was taken.

The next day, the detectives contacted Etzel at his Deep Lake Boundary Road property. Etzel confirmed that Moreau brought the sawmill there and used it to mill lumber, but said Moreau removed it hours before the detectives arrived. The detectives photographed the location where the sawmill had been kept, along with the fresh tire tracks consistent with recent removal of the sawmill.

Approximately two months later, a detective received a tip from Turley's neighbor that he could hear a sawmill being operated on Turley's property. However, by the time a deputy responded, the sound had stopped.

*Procedure*

Pursuant to a plea agreement, Turley agreed to plead guilty to four counts[2] including second degree burglary. At the guilty plea hearing, Turley declined to make a factual statement of guilt to support his guilty plea. Instead, Turley agreed the court could review the police reports to establish a factual basis for his plea.

At sentencing, the State requested additional time to seek information related to restitution. The court granted the State's request and left restitution open to be determined at a later hearing. Subsequently, the State filed a "Motion and Affidavit for Order of Restitution," requesting $11,440.03 to compensate Bennett. Attached to the motion were several documents including an invoice showing that Bennett paid $5,116 for the sawmill in 2015. CP at 90. Turley filed a response to the State's request for restitution, arguing the sawmill had been stolen outside the charging period in the information, and that there was not a causal connection between the burglary to which he pleaded guilty and the stolen sawmill.

The court held a restitution hearing. Turley waived his appearance at the hearing. Following a discussion about the date range of the crime included in the information, the court ruled on Turley's objection:

> And I do believe that I can hold Mr. Turley responsible for [the sawmill] because again, he pled guilty to a burglary that was connected to

---

[2] The other counts were the result of the State consolidating all of Turley's pending criminal cases.

this property. And also, when Mr. Turley was interviewed, he had an awful lot of information about the sawmill. Who had been involved in it and where it had been going and then ultimately, as [the prosecuting attorney] remined [sic] me, that in October they interviewed a neighbor of Mr. Bennett's or at least of the property of Brian Brooke and he indicated that he was able to hear a sawmill being operated on Mr. Turley's property.

So between Mr. Turley's presence on the property, the knowledge that he has about it's [sic] movements and whereabouts and then the circumstantial evidence of the neighbor seeing it, I think I can conclude reasonably that Mr. Turley is responsible for that. And as [the prosecuting attorney] indicated, I do have discretion to double the victim's loss or the defendant's gain, so in this situation I will use that discretion and I'll double that to $10,500.00.

RP at 79-80. Following the hearing, the court entered a written order of restitution, ordering Turley to pay $10,500 to Bennett. The order did not include a breakdown of how the court reached that amount.

Turley timely appeals the restitution order.

ANALYSIS

Turley raises several issues with respect to his challenge of the restitution order including that the court erred in concluding that the date range in the information was a scrivener's error. Because we conclude that the facts used to support Turley's plea fail to establish a causal connection to the missing sawmill, we do not address the other issues raised by Turley.

*A. Standard of Review and Restitution Legal Principles*

A court's decision ordering restitution is reviewed for abuse of discretion. *State v. Tobin*, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007). "We will reverse such an order only if it is manifestly unreasonable or the sentencing court exercised its discretion on untenable grounds or for untenable reasons." *State v. Woods*, 90 Wn. App. 904, 906, 953 P.2d 834 (1998).

A court's authority to impose restitution is derived from statute. *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). The trial court must order restitution "whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property." RCW 9.94A.753(5). In addition, the court can order restitution up to double the amount of the victim's loss. *See* RCW 9.94A.753(3)(a).

There must be a causal connection between a victim's losses and the defendant's offense. *Griffith*, 164 Wn.2d at 965. "Losses are causally connected if, but for the charged crime, the victim would not have incurred the loss." *Id.* at 966. When determining causation, the court looks to "'the underlying facts of the charged offense, not the name of the crime to which the defendant entered a plea.'" *Griffith*, 164 Wn.2d at 966 (quoting State v. Landrum, 66 Wn. App. 791, 799, 832 P.2d 1359 (1992)).

The restitution amount must be based on "easily ascertainable damages" and supported by "substantial credible evidence." RCW 9.94A.753(3)(a); *State v. Fleming*, 75 Wn. App. 270, 274-75, 877 P.2d 243 (1994). If the defendant disputes the amount of

6

restitution, the State bears the burden of proving the damages by a preponderance of the evidence. *State v. Kinneman*, 155 Wn.2d 272, 285, 119 P.3d 350 (2005). Evidence is sufficient to support a restitution order if it provides a reasonable basis, other than conjecture or speculation, to estimate the loss. *Id*.

"'The general rule is that restitution may be ordered only for losses incurred as a result of the precise offense charged. Restitution cannot be imposed based on the defendant's "general scheme" or acts "connected with" the crime charged, when those acts are not part of the charge.'" *Woods*, 90 Wn. App. at 907-08 (quoting *State v. Miszak*, 69 Wn. App. 426, 428, 848 P.2d 1329 (1993)).

At the restitution hearing, defense counsel argued that Turley's case was similar to *Mizack* to support his argument that Turley could only be held responsible for the burglary as charged. In *Miszak*, the defendant was charged with second degree theft for taking jewelry from a victim "on or about February 27, 1989." 69 Wn. App. at 426. Subsequently, the defendant pleaded guilty to an amended information charging him with attempted second degree theft. *Id*. at 426-27. In his statement on plea of guilty, the defendant admitted that, on February 27, 1989, he took one piece of jewelry valued at least $250. *Miszak*, 69 Wn. App. at 427. However, "the trial court ordered Miszak to pay $4,517 in restitution," representing the total loss claimed by the victim from 13 items of jewelry she claimed were stolen. *Id*.

On appeal, this court held that the restitution order violated the rule that "[r]estitution cannot be imposed based on the defendant's 'general scheme' or acts 'connected with' the crime charged when those acts are not part of the charge." *Id*. at 428. The court explained that the defendant

> "was charged with and adjudged guilty of attempted theft of jewelry on February 27, 1989, the date designated in the information. At the restitution hearing, the State offered no evidence whatsoever to prove that the 13 items had been taken during commission of the charged crime. In fact, the evidence tended to prove the contrary. The victim's letter, which was the sole evidence of loss offered by the State, affirmatively established that the losses took place 'systematically' over a period of 'months.' Thus, the evidence was insufficient to support the restitution order for the entire loss claimed by the victim."

*Miszak*, 69 Wn. App. at 428.

Because the record did not show which item Miszak took on February 27, and because he had not agreed to pay restitution for losses incurred due to uncharged crimes, the court vacated the ordered restitution and remanded. *Miszak*, 69 Wn. App. at 430. The court held that the victim's loss was "limited to the one item of jewelry that [the defendant] actually admitted taking." *Miszak*, 69 Wn. App. at 430.

B. *Analysis*

Applying these principles to this case, we conclude the State failed to show that but for the single burglary crime to which Turley participated and pleaded guilty, the property owner would not have lost the sawmill. Instead, the police reports show that the property was burglarized numerous times over the course of several months by

8

different people.  Turley was charged with and pleaded guilty to only one of these burglaries.  Both Turley and Enright told deputies that Moreau took the sawmill, but the description of the security video of Turley's crime does not mention Moreau's presence.  The security video also shows Turley and Enright leaving the property in Turley's truck, which contained several items including black barrels and a fishpond, but there is no mention that the video shows Turley's truck pulling a trailer or leaving with the sawmill.

The trial court relied on Turley's knowledge of who took the sawmill and where it was taken.  But Turley was not charged with conspiracy, and the State does not suggest that his knowledge of the sawmill makes him culpable for its loss.  Instead, the State argues that Turley can be held liable whether he was acting as a principal or accomplice.  Respondent's  Br. at 25.  But this is only true if Turley participated in the specific crime that resulted in the loss of the sawmill.  Turley cannot be held liable for a "general scheme" of thefts spanning multiple burglaries.

The court also relied on a witness's statement that a sawmill could be heard on Turley's property several months after the burglaries.  But this vague statement is similarly insufficient to create a causal connection between Turley's burglary and the missing sawmill.  The statement was simply that a witness heard a sawmill being operated.  There is no evidence that it was the stolen sawmill.  Even if it was, Turley's subsequent use of a stolen sawmill does not support a finding that Turley participated in the burglary that resulted in the sawmill being stolen.

The evidence used to support Turley's plea did not establish a causal connection between his crime and the loss of the sawmill. Therefore, the trial court abused its discretion by including the stolen sawmill in the order of restitution. We reverse the order of restitution and remand with instructions for the trial court to recalculate the restitution amount without the sawmill.

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Murphy, J.